**John B. LOVE, V, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 57965.

Court of Criminal Appeals of Texas, Panel No. 1.

April 4, 1979.

Rehearing En Banc Denied June 20, 1979.

Anthony Nicholas and Terrence W. McDonald, Mayo J. Galindo, San Antonio, for appellant.

Bill M. White, Dist. Atty., Federico G. Rodriguez and Lisa M. Beck, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and PHILLIPS and TOM G. DAVIS, JJ.

OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for murder. V.T.C.A. Penal Code, Sec. 19.02. After the jury returned a verdict of guilty, punishment was assessed by the court at 30 years.

The record reflects that on October 18, 1974, at approximately 7:20 p. m., appellant's estranged wife was fatally stabbed outside her San Antonio apartment. She went to a neighbor's apartment to seek assistance. Roland Bradfute, the neighbor, admitted the deceased after she knocked on the door and shouted, "Let me in. Please help me. I am bleeding to death."

Bradfute testified that the deceased fell to the floor of the apartment after entering. Bradfute summoned assistance on the telephone and returned to the deceased's side. He asked the deceased several times who had stabbed her, and the deceased finally responded, "My husband."

Other witnesses, such as police officers and the ambulance crew, testified as to other statements made by the victim while she was still in the apartment. These statements were in response to questions regarding the identity of her attacker. The tenor of these questions ranged from "who did it" to "was it your husband."

Joe Garcia, another neighbor, testified that sometime between 7:00 and 7:30 p. m. he saw the appellant place the screen back on the window of the deceased's apartment. He stated that he confronted the appellant and was told that the appellant had been repairing the window. As appellant walked away, Garcia saw a blade-like object in the appellant's hip pocket. Garcia later responded to the deceased's cries for help and saw her enter Bradfute's apartment.

Officer Paul Hernandez of the San Antonio Police Department testified that about 7:00 p. m. on the same night he had seen the appellant walking toward the apartment complex in which the deceased lived. Officer Hernandez worked part-time as a security guard for the apartment complex.

Judi Imbriani, a niece of the deceased, testified regarding conversations with the deceased about a month prior to the attack. Her testimony included statements attributed to the deceased such as, "I am tired of running from John," and "I know he is going to get me sooner or later."

Nora Siedensticker, a friend of the deceased, testified as to conversations with the deceased one day before the attack. She stated that the deceased had told her that she "was tired of running and did not mind dying, but did not think John had a right to say when she had to die." This witness also testified she offered the deceased a pistol for protection, but the deceased refused to take the gun, stating "no, if John [is] going to kill [me], then he [has] to suffer the consequences."

Laura Long, a first cousin of the deceased, testified regarding her conversations with the deceased approximately one month before the attack. Long testified that the deceased had told her that the appellant had broken into her apartment several times, and on one of these occasions threatened her with a knife. Long also testified that the deceased told her that on this occasion the appellant said, "He would have killed her except that he loved her too much."

Appellant presented evidence that he had been in a bar near the apartment complex where the deceased lived until about 7:30 p. m. on the night of the offense. He testified that he then drove to Fredericksburg and did not return to San Antonio until after midnight.

Appellant contends that the trial court erred in admitting the hearsay testimony of Imbriani, Siedensticker, and Long regarding their conversations with the deceased. He maintains that the statements were prejudicial and harmful. Appellant objected to the admission of each of these witnesses' testimony regarding their conversations with the deceased.

The State responds that these statements were admissible under V.T.C.A. Penal Code, Sec. 19.06, to evaluate the relationship between the appellant and the deceased. The State further contends that the statements were introduced only to show the state of mind of the deceased, and therefore an exception to the hearsay rule. Finally the State urges that the appellant was not harmed by the admission of these statements.

■ The State's reliance on Sec. 19.06, supra, does not resolve the issue presented. Section 19.06, supra, does not extend the rules of hearsay as to allow the admission of otherwise inadmissible hearsay statements. *Fazzino v. State*, Tex.Cr.App., 531 S.W.2d 818; *Erwin v. State*, Tex.Cr.App., 531 S.W.2d 337; *Jones v. State*, Tex.Cr. App., 515 S.W.2d 126.

The statements in the present case were statements of a spouse made outside of the presence of the appellant. Such statements have been held inadmissible in the prosecution for the murder of that spouse. *Fazzino v. State,* supra; *Jones v. State,* supra.

In *Jones v. State,* supra, as in the present case, the State contended that the statements were admissible to show the state of mind of the deceased. The Court, in *Jones,* answered this contention as follows:

"The State contends that this testimony is admissible under several doctrines which avoid the hearsay rule. It is urged the testimony was offered as evidence of the deceased's state of mind at the time of the shooting and that it was not consistent with one against whom the appellant would have to defend herself. If indeed it was evidence of the deceased's state of mind, the testimony is not hearsay at all because it was not offered for its truth but to show that the deceased believed it. McCormick & Ray, Texas Law of Evidence, § 862 (1956). However, for the deceased to truly have the state of mind here presented, one could only assume that the accusations were indeed true; why else the state of mind? The effect is that the state of mind cannot be imputed to deceased without believing the truth of his statements. The statement did not demonstrate intent of future action but only discussed, three years prior to the shooting, an incident that had occurred some time prior to the conversation. It could not have been offered to prove only the state of mind, but had to imply the truth of the matter asserted. This exception to the hearsay rule does not allow admission of this testimony in this case. Cf., *People v. Hamilton*, 55

Cal.2d 881, 13 Cal.Rptr. 649, 362 P.2d 473 (1961)."

515 S.W.2d at 129. *See, Burchfield v. State,* Tex.Cr.App., 475 S.W.2d 275; *Buckelew v. State,* Tex.Cr.App., 431 S.W.2d 13.

■ In the present case, the testimony could not have shown the deceased's state of mind unless the statements were taken as true. Further, we note that the State extensively cross-examined the appellant on inconsistencies between his testimony and these statements attributed to his wife. This use is not consistent with the State's position that the testimony showed only state of mind, but instead reveals that the statements were used as if they were true.

We find that the statements were inadmissible hearsay, and their admission into evidence was error.

■ We cannot say that the admission of these statements was harmless to the appellant. They revealed that the deceased was apprehensive of attacks by the appellant, and further showed a prior attack by the appellant on the deceased. The State's use of these statements to impeach the appellant's testimony put his credibility in issue to be weighed against the credibility of both the witness at trial and the deceased. He was obviously unable to attack the credibility of the deceased's statements. We hold that the admission of this testimony was reversible error in this case.

We express concern about the admissibility of certain statements attributed to the deceased following the stabbing. It appears that some of these statements were made in response to leading or suggestive questioning. Further, the record is unclear as to whether the deceased was conscious of approaching death and believed that she had no hope of recovery. All these factors are important in consideration of whether these statements would be admissible as to either res gestae or dying declarations. *See,* Art. 38.20, V.A.C.C.P.; *Silva v. State,* Tex.Cr.App., 546 S.W.2d 618; *Munoz v. State,* Tex.Cr.App., 524 S.W.2d 710.

The judgment is reversed and the cause remanded.