Jesse **HUIZAR**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–83–00071–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 29, 1986.
Discretionary Review Refused
Jan. 28, 1987.

Charles Butts, San Antonio, for appellant.

Sam Millsap, Jr., Edward Shaughnessy, Crim. Dist. Attys., San Antonio, for appellee.

Before ESQUIVEL, CANTU and DIAL, JJ.

OPINION

DIAL, Justice.

Appellant was found guilty by a jury of the offense of murder. The trial court assessed punishment at five (5) years' confinement.

On original submission, this court held that the charge to the jury constituted reversible error because it failed to require the negation of sudden passion arising from adequate cause even though no objec-

tion was lodged on this ground at trial. On the State's petition for discretionary review, this cause was remanded to us for further proceedings consistent with the Court of Criminal Appeals' opinion in *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim. App.1985) (Opinion on State's Motion for Rehearing), which was decided subsequent to our initial decision in this case.

The standard by which we review appellant's claim of fundamental error, as alleged in his first point of error, is whether the error is so egregious and created such harm that appellant has not had a fair and impartial trial. *Almanza v. State*, 686 S.W.2d at 171. The actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Id.*

The evidence reveals that Martin Hernandez was working at Perf's Garage along with his supervisor, Miguel Ballesteros on May 13, 1981. There were a number of other people at the garage including Joseph Santos. Martin and Joseph Huizar, two of appellant's sons, were driving their Camaro and stopped at the garage. Although the evidence is disputed as to who started the trouble, the Huizar brothers ended up in a brawl with about eight of the people at the garage. During the fight Martin Huizar was struck a number of times on the head with a ball peen hammer. Both Huizars were kicked by people wearing steel-toed shoes and hit with chains. Martin Huizar managed to get back to the Camaro. As they started to smash the car windows, Martin Huizar drove away leaving his brother, Joseph, still struggling. Martin Huizar immediately drove two blocks to his home where his father, the appellant, was. Appellant was home recuperating from a gall bladder operation he had had three weeks prior to May 13. Appellant was not feeling well and still on medication.

When Martin Huizar walked into his home dazed and battered, appellant became excited and wanted to know what happened. Martin Huizar told appellant that he and his brother Joe had been jumped by guys at Perf's Garage. He said he had gotten away and thought Joe was still there. He expressed his fear that Joseph was being severely beaten and may even have been killed. According to Martin Huizar, appellant just panicked upon hearing this and said, "Let's go get Joe." Appellant testified that he became very nervous. He was concerned over Martin's condition and afraid that Joe was dying or already dead. Appellant believed it was immediately necessary to do something to rescue his son, Joseph. Unbeknown to the Huizars, Joseph had managed to break away and was assisted by a neighbor to her home across the street from the garage.

Appellant and his sons, Martin (who was driving) and Eddie, got into the Camaro and raced towards Perf's Garage.

Martin Hernandez testified that everyone had left the garage and he and Miguel Ballesteros had just finished closing the garage when he heard the Camaro coming. They jumped into Ballesteros's red Chevelle and sped away with the Huizars in pursuit. According to Hernandez, Ballesteros never took part in the fight but had attempted to stop it. When he was unsuccessful, Ballesteros began closing the garage for the day. Martin and Joseph Huizar claimed that Ballesteros did take part in the fight. When they saw the red Chevelle speed away, appellant and Martin Huizar believed that Joseph, either badly beaten or dead, was in the car. The chase ended on the exit ramp from Interstate 10 east and Culebra Road. Here again, there are different versions of what next transpired.

Martin Hernandez testified that Miguel Ballesteros was driving the Chevelle, and he was in the front passenger seat. As they came to a stop on the exit, the Huizar car came diagonally across in front to block their way. Before the Camaro stopped, appellant fired a shot which went through the front windshield by the inspection sticker. Miguel Ballesteros then pushed Martin

Hernandez down onto the floor and got down himself. Appellant opened the Chevelle's driver side door, reached in, turned Ballesteros around, shot Ballesteros in the neck, and asked, "Where is my son?" When Ballesteros told appellant he did not know, appellant said he was going to have to shoot this son-of-a-bitch and then shot Ballesteros once in the stomach. Martin Huizar then grabbed Hernandez and appellant shot at Hernandez but hit his son, Martin, in the arm. The three Huizars dragged Hernandez from the car and began beating and kicking him. Appellant kept asking, "Where is my son?" A deputy U.S. Marshall then arrived at the scene and ordered appellant to surrender his gun. Appellant gave the gun to the deputy. Police and ambulances were summoned. Hernandez testified that appellant was shaking, talking loud and seemed pretty excited during the incident.

Eddie Huizar described appellant's demeanor as frantic, upset and in shock. Appellant kept asking, "Where is my son?"

Appellant testified that he did not fire a shot into the Chevelle's windshield before the Camaro stopped. Appellant stated that as he approached the Chevelle demanding to know where his son was, Ballesteros lunged at him, Martin Huizar stepped in between both of them, and the gun went off striking Martin in the arm. He did not remember shooting Ballesteros. He did not intend to kill anyone but was trying to get Ballesteros off or away from him. Appellant said he was in shock and scared. Appellant denied attacking Hernandez.

Cruz Mendoza, a driver who was in a vehicle a few car lengths behind the Chevelle, testified to the sequence of events which he observed. His testimony supports that given by Martin Hernandez.

An attorney, who witnessed part of the event, testified that he saw three guys beating the man who was on the ground by the passenger side of the Chevelle.

Miguel Ballesteros subsequently died from the gunshot wounds inflicted and the complications resulting from those wounds. The medical examiner who performed the autopsy listed the manner of death as homicide and the cause resulting from the gunshot wounds.

Martin Huizar had a craneotomy operation and was subsequently released from the hospital.

Joseph Huizar received no formal medical treatment.

In addition to the charges given to the jury on murder and voluntary manslaughter, the jury was instructed on deadly force in defense of a person and deadly force in defense of a third person. The jury was also instructed on cause of death.

The jury arguments are not included in the record before us.

■ In order to be entitled to a charge on voluntary manslaughter, there must be some evidence that the defendant acted under the immediate influence of sudden passion arising from an adequate cause. *Lamb v. State,* 680 S.W.2d 11 (Tex.Crim. App.1984), *cert. denied,* 470 U.S. 1009, 105 S.Ct. 1372, 84 L.Ed.2d 391 (1985); *Aquirre v. State,* 683 S.W.2d 502 (Tex.App.—San Antonio 1984, pet. ref'd). Under TEX.PENAL CODE ANN. § 19.04(b) (Vernon 1974), the "sudden passion" must be directly caused by and arising out of provocation by the deceased, or someone acting with him, at the time of the offense; passion solely the result of former provocation will not qualify. *See Hobson v. State,* 644 S.W.2d 473 (Tex.Crim.App.1983). In the instant cause, there is no evidence of sudden passion directly related to any action of the deceased or Hernandez arising at the time of the offense. Under the State's evidence, Ballesteros was shot as he lay, without struggling, in the car. The defense evidence clearly does not show a shooting resulting from sudden passion arising at the time of the act. Appellant was thus not entitled to a charge on voluntary manslaughter. Generally, a conviction will not be reversed nor may an appellant complain of a beneficial charge erroneously submitted. *Ex parte Green,* 548 S.W.2d 914 (Tex.Crim.App.1977); *Aquirre v. State,* 683 S.W.2d at 513. Under such circum-

**654**

stances, we cannot say that the error in the charge was so egregious and created such harm that appellant was denied a fair and impartial trial. The first point of error is overruled.

■ Appellant's second point of error is that the trial court erred in refusing to charge on the law of "mistake of fact."

TEX.PENAL CODE ANN. § 8.02(a) (Vernon 1974) provides that it is a defense to prosecution if the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense. "Kind of culpability" refers to the culpable mental state. *Beggs v. State*, 597 S.W.2d 375 (Tex.Crim.App.1980). Appellant's mistaken belief that his son was seriously hurt or dead in the Chevelle and in need of rescuing does not, in and of itself, negate the culpable mental states of intentionally and knowingly causing the death of Ballesteros. The second point of error is overruled.

■ In his third point of error, appellant alleges the trial court erred in refusing his requested charge on the law of "necessity."

TEX.PENAL CODE ANN. § 9.22 (Vernon 1974), "Necessity," provides:

Conduct is justified if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law prescribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

A reasonable belief is one that would be held by an ordinary and prudent man in the same circumstances as the actor. TEX.PENAL CODE ANN. § 1.07(a)(31) (Vernon 1974). There is no evidence in the record that appellant actually shot and killed Bal-

lesteros believing he had to do so to avoid imminent harm to himself or his son.

Appellant stated he never intended to kill anyone. In fact, appellant never admitted deliberately shooting Ballesteros. Appellant's third point of error is overruled.

■ Appellant's fourth point of error asserts the trial court erred in refusing his requested charge under TEX.PENAL CODE ANN. § 19.06 (Vernon 1974).

The trial court permitted the introduction of evidence concerning the fact and circumstances surrounding the entire incident. No previous relationship was shown to have existed between the deceased and appellant. Evidence of appellant's state of mind was admitted. The trial court appears to have permitted the introduction of the type of evidence contemplated by § 19.06, *supra*. Having done so, was a charge thereon mandatory? We do not believe so.

Section 19.06 is essentially a rule of evidence which dictates the scope of evidence that may be considered in prosecutions for murder or voluntary manslaughter. *See Jones v. State*, 689 S.W.2d 510 (Tex.App.— El Paso 1985, no pet.). While giving a charge on § 19.06 is permissible, *Valentine v. State*, 587 S.W.2d 399 (Tex.Crim.App. 1979), it has not been held to be mandatory or reversible error to refuse to do so. *Jones v. State*, 689 S.W.2d at 512.

The charge in the instant cause adequately directed the jury on the evidence presented. No error is shown. The fourth point of error is overruled.

The judgment is affirmed.