Charles Ray McDONALD, Appellant,

v.

STATE of Texas, Appellee.

No. 04–93–00555–CR.

Court of Appeals of Texas,
San Antonio.

Nov. 1, 1995.

Rehearing Overruled Nov. 29, 1995.

Mark Stevens, San Antonio, for appellant.

Angela Moore, Assistant Criminal District Attorney, San Antonio, for appellee.

Before CHAPA, C.J., and HARDBERGER and DUNCAN, JJ.

## OPINION

DUNCAN, Justice.

Charles Ray McDonald was convicted of capital murder and sentenced to life in prison for the murder of his ex-wife, Carolyn DeWitt. McDonald appeals on ten points of error complaining, in large measure, of the exclusion of expert testimony, and the refusal of a charge, on his "battered spouse" defense; improper references by the prosecution to an unadmitted police report; the jury selection process; and *Cobarrubio* error. We affirm.

## FACTS

On October 24, 1991, Charles Ray McDonald slit the throat of his ex-wife, Carolyn DeWitt. With Carolyn lying dead in the passenger seat of her blue Mazda pickup, McDonald drove to the police station, walked in, and announced that he thought his wife was dead. McDonald was detained as a homicide suspect.

Within days of Carolyn's death, Mark Greene informed the police that, at approximately 3:20 p.m. on the day of the killing, while he was getting gas, a woman in a blue Mazda truck (whom he later identified as Carolyn) rolled down her window and said to him in a hushed tone "Help me, sir, I am handcuffed and my husband has a gun." Greene did not see any handcuffs, however, and none were found in Carolyn's pickup. A pair of handcuffs was later found by McDonald's brother, Ricky Walker, in McDonald's car. Walker, however, threw the handcuffs away.

The State charged McDonald with capital murder, alleging that McDonald murdered Carolyn during the course of felony kidnapping. At his subsequent trial, McDonald admitted that he had killed Carolyn, but he denied that he had at any point held Carolyn against her will. According to McDonald, Carolyn pulled a gun on him while he was driving, and he killed Carolyn in self-defense and while "enraged."

The jury rejected McDonald's self-defense and sudden passion arguments and found him guilty of capital murder. Pursuant to

1. Subsequent to the trial of this case, section 19.06 was repealed and reenacted as article

statute, the trial court sentenced McDonald to life imprisonment.

## EXCLUSION OF EVIDENCE AND REFUSAL OF JURY INSTRUCTION UNDER SECTION 19.06 OF THE TEXAS PENAL CODE

### *Exclusion of Dr. Munsinger's Testimony*

■ In his first point of error, McDonald argues that the trial court erred in excluding Dr. Harry Munsinger's testimony that McDonald reasonably believed that deadly force was necessary to protect himself from Carolyn because he was suffering from dependent personality disorder. McDonald argues that the testimony was admissible under section 19.06(b) of the Texas Penal Code.[1] The State counters that section 19.06(b) does not constitute a per se rule of admissibility; rather, evidence within the reach of section 19.06(b) is admissible if and only if the evidence meets the other prerequisites for admissibility under the Texas Rules of Evidence—a test Dr. Munsinger's testimony fails to meet. We agree.

■ A trial court's ruling on the admissibility of evidence is subject to an abuse of discretion standard on appeal. *Duckett v. State,* 797 S.W.2d 906, 910 (Tex.Crim.App. 1990). An abuse of discretion will be found "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State,* 842 S.W.2d 667, 682 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993). Even if the trial court's reason for its ruling is incorrect, the ruling will be upheld if it is permissible under any theory applicable to the case. *See Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990) (en banc).

On the date of Carolyn's death and at the time of trial, section 19.06(b) provided:

(a) In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the

38.36 of the Texas Code of Criminal Procedure.

accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

(b) In a prosecution for murder or manslaughter, if a defendant raises as a defense a justification provided by Section 9.31, 9.32, or 9.33 of this code, the defendant, in order to establish the defendant's reasonable belief that the use of force or deadly force was immediately necessary, shall be permitted to offer:

(1) relevant evidence that the defendant had been the victim of acts of family violence committed by the deceased, as family violence is defined by Section 71.01, Family Code; and

(2) relevant expert testimony regarding the condition of the mind of the defendant at the time of the offense, including those relevant facts and circumstances relating to family violence that are the basis of the expert's opinion.

Section 19.06(b)(2) was not effective until September 1, 1991.

 McDonald first argues that the trial court improperly excluded Dr. Munsinger's testimony because it was based solely upon hearsay. We agree that expert testimony is not rendered inadmissible simply because it is based in whole or in part upon hearsay. *See Aguilar v. State,* 887 S.W.2d 27, 29 (Tex. Crim.App.1994) (en banc); Tex.R.Crim.Evid. 705(c). We also recognize that the State argued that the testimony was inadmissible because it was based upon hearsay and, in this regard, relied upon the now-discredited *Whitmire v. State,* 789 S.W.2d 366 (Tex. App.—Beaumont 1990, pet. ref'd). Finally, we recognize that the trial judge agreed that Dr. Munsinger's testimony was based upon hearsay, and that she reviewed *Whitmire.* We disagree, however, that the trial judge excluded Dr. Munsinger's testimony simply because it was based on hearsay. To the contrary, the trial judge gave no reason for her ruling; she simply stated "I'm going to rule this testimony inadmissible." Moreover, even had she indicated that her ruling was based upon Dr. Munsinger's reliance upon hearsay, it would not constitute reversible error. As noted above, we are obligated to uphold the trial court's ruling if it is correct

under any theory applicable to the case. *See Romero,* 800 S.W.2d at 543.

McDonald next argues that Dr. Munsinger's testimony "was directly relevant to whether [McDonald] reasonably believed deadly force was immediately necessary to prevent Carolyn DeWitt's use of unlawful deadly force against him." We agree that, if McDonald established a sufficient basis from which a reasonable juror could infer that McDonald was a victim of family violence, Dr. Munsinger's testimony would be relevant, *i.e.,* it would have tended to make a material fact—McDonald's state of mind at the time he killed Carolyn—more or less probable. *See* Tex.R.Crim.Evid. 401. However, we disagree that McDonald introduced sufficient evidence to raise a triable issue of fact as to the condition upon which the relevance of Dr. Munsinger's testimony depended, *i.e.,* that McDonald was a victim of family violence. *See Fielder v. State,* 756 S.W.2d 309 (Tex.Crim.App.1988).

In *Fielder,* the State argued that Mrs. Fielder killed her husband out of a jealous rage provoked by her discovering her soon to be ex-husband with another woman. Mrs. Fielder, on the other hand, claimed self-defense. In support of her claim, Mrs. Fielder brought forward substantial evidence that she had been a victim of family violence— graphic evidence that her husband forced her to endure sado-masochistic sexual abuse with increasing severity during the course of the marriage. Mrs. Fielder also sought to support her theory of defense with the testimony of three expert witnesses: Dr. Matheeney, a marriage and family counselor, who would have testified as to why Mrs. Fielder, as a victim of spousal violence, would have stayed in an abusive relationship; and Dr. Shupe, a sociology professor, and his associate, Dr. Stacy, who would have testified that only 2% of the men they had studied were more violent than Mr. Fielder and that Mrs. Fielder therefore experienced an "exceptionally high" level of violence. The trial judge excluded this testimony, as well as that of the State's rebuttal witness, because he found it to have "no relevance." The court of appeals affirmed, holding that the evidence was irrelevant and, even if relevant, would not have

assisted the trier of fact because Mrs. Fielder's fear of bodily injury or death was a matter within an average juror's comprehension. *Fielder*, 756 S.W.2d at 317–18.

The court of criminal appeals reversed, holding that it was reversible error to exclude the testimony of Dr. Matheeney because: (1) the testimony was relevant to the reasonableness of Mrs. Fielder's apprehension of fear that her husband was about to use deadly force against her at the time of his killing in that it rebutted the inference that Mrs. Fielder's remaining in the relationship was inconsistent with her claim that she so feared her husband that she reasonably believed deadly force was necessary to protect herself from him; and (2) the testimony would have been of assistance to the trier of fact in that Dr. Matheeney was able to explain why a woman in Mrs. Fielder's position could have feared for her life and yet have endured the abuse for a number of years. *Id.* at 320–21. The court further ruled that the exclusion of Drs. Shupe and Stacy's testimony was not reversible error because it was cumulative of Mrs. Fielder's. *Id.*

We recognize that *Fielder* was decided prior to the enactment of section 19.06(b)(2), which expressly renders admissible expert testimony "regarding the condition of the mind of the defendant at the time of the offense, including those relevant facts and circumstances relating to family violence that are the basis of the expert's opinion." However, we nonetheless believe that *Fielder* demonstrates two propositions of importance to our analysis in this case. First, the expert testimony excluded in *Fielder* was offered and made relevant by its tendency to "revitalize the violent *past* of the parties, in order to rehabilitate the inference of [Mrs. Fielder's] ultimate apprehension of danger *at the time of the killing.*" *Fielder*, 756 S.W.2d at 320 (emphasis in original). In other words, it was because Mrs. Fielder's evidence satisfied section 19.06(b)(1)—she had been a victim of previous acts of violence by Mr. Fielder— that rendered her expert testimony relevant under section 19.06(b)(2). Second, the court did not treat relevancy as the sole test for admissibility under section 19.06(b)(2); rather, it looked also to the rule now codified in

Rule 702, TEX.R.CRIM.EVID., that requires that expert testimony assist the jury. We believe these factors demonstrate that the trial judge acted within the ambit of her discretion in excluding the testimony of Dr. Munsinger in this case.

Unlike Mrs. Fielder, McDonald did not testify regarding specific "past violent encounters with the deceased." *Fielder*, 756 S.W.2d at 311, 319. Rather, McDonald testified, in a conclusory fashion, that he repeatedly cut Carolyn's throat with his pocketknife and wanted her dead because he felt "frustrat[ed]," "enraged," "scared" and "threatened." In support of his testimony that he felt scared and threatened, however, McDonald cited only two reasons for feeling as he did: (1) Carolyn had said that, if she caught him with another woman, she would "remove a part of [his] anatomy or shoot [him] or something like that"; and (2) Carolyn was yelling at him and pointing a gun at the time he killed her.[2] Also unlike Mrs. Fielder, McDonald's testimony was completely uncorroborated. *See Fielder*, 756 S.W.2d at 311 n. 1 (physical evidence), 314 n. 2 (photograph).

In short, assuming the truth of McDonald's assertions, there simply was insufficient direct evidence before the jury to raise a triable issue of fact as to whether McDonald had been a victim of family violence, inflicted by Carolyn, prior to the date of the killing, nor was there any circumstantial evidence from which the jury could reasonably have inferred this predicate fact. Because McDonald failed to establish the factual predicate required by section 19.06(b)(1), his proffered expert testimony was irrelevant and inadmissible under section 19.06(b)(2). Under these circumstances, we believe the trial judge could have concluded that Dr. Munsinger's testimony was inadmissible because it was irrelevant, without a sufficient basis in fact, and unlikely to assist the jury. *See* TEX.R.CRIM.EVID. 402, 702, 705(c); *compare Fielder*, 756 S.W.2d at 320–21 *with McClure v. State*, 575 S.W.2d 564 (Tex.Crim. App.1979) (in light of section 19.06(a), trial court erred in excluding the testimony of Mr.

---

**2.** McDonald also testified that Carolyn had threatened him several times with accusing him

of rape, but he did not relate these threats to his state of mind at the time of the killing.

McClure and third parties regarding specific instances of infidelity by the deceased, Mr. McClure's wife, and the testimony of a court-appointed psychiatrist regarding the effect on Mr. McClure of Mrs. McClure's past behavior, as well as her behavior on the date he killed her). Accordingly, we hold that the trial judge did not abuse her discretion in excluding Dr. Munsinger's testimony and overrule McDonald's first point of error.

### Refusal of Jury Instruction

■ In his sixth point of error, McDonald complains that the trial court erred in refusing a requested jury instruction under section 19.06. The tendered instruction provides:

> You are instructed that it is your duty to consider all the facts and circumstances in the case in evidence before you and consider the words, acts and conduct, if any, of Carolyn DeWitt at the time of and prior to the time of the alleged assault and consider whatever threats, if any, the said Carolyn DeWitt may have made to the defendant considering difficulty or difficulties which the said Carolyn DeWitt had had with the defendant and in considering such circumstances you should place yourselves in the defendant's position at that time and view them from his standpoint alone.

The State counters that, because the jury was instructed on "reasonable belief" in conjunction with the court's charge on self-defense, the tendered section 19.06 instruction was not required.

This court has previously held that an instruction under section 19.06 is permissive rather than mandatory. *See Huizar v. State*, 720 S.W.2d 651 (Tex.App.—San Antonio 1986, pet. ref'd). More importantly, however, even if such an instruction were mandatory in an appropriate case, the evidence in this case simply did not raise a triable issue of fact as to whether McDonald was a victim of family violence. Accordingly, the trial court did not err in refusing McDonald's requested instruction. *Cf. id.* at 653.

### PROSECUTORIAL REFERENCES TO EXCLUDED POLICE REPORT

In his second point of error, McDonald argues that the trial court erred in denying his motion for mistrial arising out of the State's use of an inadmissible police report in cross-examination of McDonald. We disagree.

During cross-examination of McDonald, the State asked whether he remembered that, on October 17, he had been intoxicated, gone over to Carolyn's home, and held a gun to her head for three hours. When McDonald denied remembering the incident, the State showed him a copy of a police report. Upon objection, the trial court instructed the State to let McDonald look at the report but not otherwise go into it. McDonald then denied having been intoxicated but admitted having gone to Carolyn's home and later having gone out to eat with her. When the State mentioned the report again, McDonald again objected; the trial judge agreed that the State could not discuss the contents of the report, and the State offered to rephrase the question. McDonald then denied that he had held a gun to Carolyn's head, threatened her, or done anything that would have caused Carolyn to have called the police. When McDonald denied the incident occurred and stated that the State was "assuming that," the State remarked that it was "assuming it based upon this offense report [McDonald] took a look at." In response to an objection by McDonald, the trial court instructed State to move on or state another question. Also at McDonald's request, the trial court instructed the jury to disregard the State's statement; however, the trial court refused to declare a mistrial.

■ Well-established Texas law provides that an instruction to disregard cures the error in admitting evidence of an extraneous offense "unless it appears the evidence was so clearly calculated to inflame the minds of the jury or is of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind." *Kemp v. State*, 846 S.W.2d 289, 308 (Tex.Crim.App.1992), *cert. denied*, — U.S. —, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993). In *Kemp*, the court upheld the trial court's denial of a mistrial because the trial court's instruction to disregard cured the erroneous admission of testimony by one of the State's witnesses that the appellant had a prior felony conviction. *Id.*

When viewed in light of *Kemp,* we believe the trial court's instruction to disregard cured any error in the State's attorney's referring to a police report that was never placed in evidence. McDonald's second point of error is overruled.

In his third point of error, McDonald complains that the trial court erred in refusing to instruct the jury to disregard the State's attorney's reference in closing arguments to the police report discussed above. Again, we disagree.

During closing arguments, the State's attorney stated that McDonald had "terrorized" Carolyn on October 17 by holding a gun to her head. He further stated that the jury would remember that he had given McDonald "an opportunity to refresh his memory about [the] offense report" ... but "[h]e didn't remember that...." McDonald objected, claiming that "[t]here was no evidence that he ever held a gun to Carolyn DeWitt on any occasion." [3] The State countered that it had asked McDonald if he could remember the incident. The trial court sustained the objection but refused to give the jury an instruction to disregard. Instead the trial court instructed the jury: "Well, Folks, it's your job to recall the evidence. Now, I can't tell you what the evidence is. Counsel is entitled to make what they believe [is] a reasonable deduction from the evidence and argue there from [sic]." McDonald's requests for further instructions were denied. The State then argued that, although it had attempted to refresh McDonald's memory, McDonald claimed he could not recall the incident.

■■■ To rise to the level of reversible error, jury argument must be extreme, manifestly improper, or inject new and harmful facts into evidence when viewed in light of the record as a whole. *Kerns v. State,* 550 S.W.2d 91, 96 (Tex.Crim.App.1977). Having reviewed the record in this case, we cannot say that the prosecutor's argument in this case meets this standard. To the contrary, the argument can be viewed as a reasonable deduction from the State's cross-examination of McDonald. Moreover, having reviewed

the record in this case, we are convinced beyond a reasonable doubt that the argument made no contribution to McDonald's conviction or punishment. *See* TEX.R.APP.P. 81(b)(2); *Whiting v. State,* 797 S.W.2d 45, 49 (Tex.Crim.App.1990).

## COMPLAINTS REGARDING JURY SELECTION

■■ In his fourth point of error, McDonald complains that the trial court erred in sustaining relevance objections to McDonald's counsel's question to venireperson Rocha, a volunteer at a battered women's shelter, regarding her observations as to why a battered spouse would stay in an abusive relationship. We disagree. The supplemental record establishes that the State exercised a peremptory challenge against Rocha. Under these circumstances, McDonald has no complaint. *See Allridge v. State,* 762 S.W.2d 146, 168 (Tex.Crim.App.1988), *cert. denied,* 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989).

■■ In his fifth point of error, McDonald argues that the trial court erred in denying his challenge for cause to venireperson Hernandez because the record as a whole establishes that Hernandez could not be fair and impartial. Again, we disagree. Although Hernandez testified at one point that he would give more credence to the testimony of police officers, he also testified that he could set aside this predisposition and that it would not affect his ability to presume the defendant innocent. Under these circumstances, the record as a whole establishes that Hernandez was not disqualified as a matter of law, and the trial judge acted within the ambit of her discretion in denying McDonald's challenge for cause. *See Harris v. State,* 784 S.W.2d 5, 22–23 (Tex.Crim.App. 1989), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990); *Little v. State,* 758 S.W.2d 551, 556 (Tex.Crim.App.), *cert. denied,* 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988).

---

**3.** The trial court had excluded the hearsay testimony of Carolyn's daughter regarding the inci-

dent.

## REFUSAL OF INSTRUCTION REGARDING MCDONALD'S INNOCENCE

 In his seventh point of error, McDonald complains that the trial court erred in refusing an instruction that provided:

I instruct you that you need not be convinced of the innocence of the defendant in order to return a verdict of not guilty to that defendant. The verdict "not guilty" does not necessarily mean the same thing as the term "innocent." Rather, it means not proven beyond a reasonable doubt.

Therefore, even though you may not be convinced of the innocence of the defendant, you shall return a verdict of not guilty if you have a reasonable doubt of the guilt of the defendant.

We disagree. As pointed out by the State, the trial judge instructed the jury in this case as required by *Geesa v. State*, 820 S.W.2d 154, 162 (Tex.Crim.App.1991). It is not required that the burden be reiterated as to each element in a separate and distinct manner. *Dominguez v. State*, 759 S.W.2d 185, 187 (Tex.App.—San Antonio 1988, pet. ref'd.). McDonald's seventh point of error is overruled.

### *COBARRUBIO* ERROR

In his eighth point of error, McDonald argues that he was egregiously harmed by the trial court's deletion of sudden passion from the application paragraphs on murder and capital murder, *i.e.*, *Cobarrubio* error. *See Cobarrubio v. State*, 675 S.W.2d 749 (Tex.Crim.App.1983). We disagree.

 If the issue of sudden passion is raised by the evidence, the absence of sudden passion becomes an "implied element" of murder. *Bradley v. State*, 688 S.W.2d 847, 851 (Tex.Crim.App.1985). Accordingly, if sudden passion is raised, the State must disprove its existence beyond a reasonable doubt, and the court's charge must instruct the jury accordingly "in the paragraph of the charge applying the law of murder to the facts of the case." *Cobarrubio*, 675 S.W.2d at 751.

 *Cobarrubio* error is not, however, fundamental error. *Lawrence v. State*, 700 S.W.2d 208, 213 (Tex.Crim.App.1985). Accordingly, this type of charge error is viewed in light of the holding in *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984). *Lawrence*, 700 S.W.2d at 213. Under *Almanza*, in the absence of an objection, as here, the appellant must show actual, and not merely theoretical, egregious harm. *Id.* 212–13. To determine whether *Cobarrubio* error has resulted in egregious harm requires review of " 'the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.' " *Id.* at 212 (quoting *Almanza*, 686 S.W.2d at 171).

 According to McDonald, just prior to his killing Carolyn, he was driving approximately 60 to 65 miles per hour on Interstate 10, and they were arguing about McDonald not taking Carolyn with him to a club in Dallas. McDonald testified he was "very upset" and Carolyn was "very angry." When McDonald turned towards Carolyn, she was pointing a gun at him. Because of her earlier threats, McDonald believed Carolyn would shoot him, so he grabbed her hand, and they struggled. At the same time, McDonald started braking the car. The gun went off and, although the gun was still in Carolyn's hand, McDonald hit her with the gun on the face. After the gun dropped to the floor, McDonald reached into his pocket and got out his pocketknife. At this point, according to McDonald, he was in a "rage." While Carolyn was looking for the gun on the floor, McDonald opened the knife and stabbed her in the throat. At the time, he felt "mad and scared." Because of his "frustration" and "rage," he "just kept cutting." By the time McDonald parked the truck at the police station, the gun was on the floor under the driver's seat.

On the other hand, the evidence established that Carolyn, who was five feet, four inches tall and weighed only 104 pounds, suffered extensive bruising on her left wrist and defensive cuts on her right hand, supporting the State's theory that Carolyn was handcuffed at the time she was stabbed; that Carolyn was handcuffed was further supported by the testimony of Mark Greene—an independent and disinterested witness; McDonald's own testimony established that he

was sufficiently composed to brake and stop the car, ultimately pulling off of the highway, and to realize when the gun dropped on to the floorboards of the car; and this was neither isolated or rapid gunfire nor a single, deadly stabbing. McDonald repeatedly sawed Carolyn's throat with a two inch blade. Moreover, McDonald's primary defensive theory throughout the trial was not sudden passion, but self-defense—a factual scenario the jury rejected when it refused to find that McDonald acted in justifiable self-defense.

Despite McDonald's transparent attempt to establish the elements of voluntary manslaughter in his testimony, we conclude, as did the court of criminal appeals in *Lawrence*, that in light of the evidence, the charge read as a whole, the arguments of counsel, and other relevant matters, "the subtle deletion of the State's burden of proof on the absence of sudden passion in the murder application paragraph cannot realistically be construed to inure to the defendant's egregious harm. Under these circumstances, we cannot say that the unobjected-to jury charge error was so 'egregious and created such harm that [appellant] has not had a fair and impartial trial.'" *Lawrence*, 700 S.W.2d at 212. McDonald's eighth point of error is therefore overruled.

## ADRIENNE DEWITT TESTIMONY

■ In his ninth point of error, McDonald argues that the trial court erred in admitting rebuttal testimony of Adrienne De-Witt that her mother had told her she had changed the locks at her home to protect herself from McDonald. In support of this argument, McDonald relies upon *Love v. State*, 581 S.W.2d 679 (Tex.Crim.App.1979). The State counters that this hearsay evidence was admissible to show Carolyn's state of mind under Rule 803(3) of the Texas Rules of Criminal Evidence. We agree.

In *Love*, the court of criminal appeals held that evidence that the deceased had told three people that she was afraid of the defendant, her ex-husband, was inadmissible. *Id.* at 681. The court reasoned that the evidence "could not have shown the deceased's state of mind unless the statements were taken as true." Accordingly, since the statements were offered for the truth of the matter asserted, they were inadmissible. *Id.* We believe *Love* has been supplanted by Rule

803(3) of the Texas Rules of Criminal Evidence. Under these rules, hearsay evidence is, by definition, offered to prove the truth of the matter asserted. TEX.R.CRIM.EVID. 801(d). Accordingly, the fact that evidence is offered to prove the truth of the matter asserted does not establish that the evidence is inadmissible. Rather, the admissibility of hearsay is determined by the exceptions contained in Rules 803 and 804.

Under Rule 803(3), "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will" is admissible as an exception to the hearsay rule. TEX.R.CRIM. EVID. 801(d). Fear, of course, is a "mental feeling." We believe therefore that the trial judge acted within the ambit of her discretion in admitting Adrienne DeWitt's testimony. McDonald's ninth point of error is overruled.

## GRAND JURY TRANSCRIPTS

■ In his tenth and final point of error, McDonald complains that the trial court erred in failing to permit him to review the transcripts of a grand jury proceeding involving allegations against McDonald's brother for tampering with evidence material to the case against McDonald. In response to McDonald's request, the State represented that the transcripts contained no mitigating evidence. The trial judge (1) ruled that the State would be required to disclose to McDonald the testimony of any grand jury witness the State planned to call to testify at McDonald's trial; and (2) sealed the transcripts and made them a part of the appellate record. McDonald asks that this court either permit his counsel to review the transcripts or, alternatively, that this court conduct an independent review of the proceedings to determine whether they contain mitigating evidence.

■ Under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the prosecutor is required to turn over material, exculpatory evidence to the defendant. *See*

TEX.CODE CRIM.PROC. art. 39.14 (Vernon 1979). Evidence withheld by a prosecutor is material if there is a reasonable probability that, had the evidence been disclosed, the outcome of the proceeding would have been different. *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).

We have reviewed the transcript of the grand jury proceedings and find no material, exculpatory evidence. Accordingly, McDonald's tenth point of error is overruled, and the judgment is affirmed.

CHAPA, C.J., concurs with results.