TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00635-CR







William Calton Evans, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT


NO. 6649, HONORABLE C. W. DUNCAN, JUDGE PRESIDING







 Appellant William Calton Evans entered a plea of not guilty before a jury and was
convicted of capital murder. See Tex. Penal Code Ann. § 19.03(a)(2) (West 1994). The trial
court assessed appellant's punishment at imprisonment for life. On appeal, appellant complains
that unlawfully obtained evidence was admitted and that the State improperly placed before the
jury evidence of an extraneous offense. We will overrule appellant's points of error and affirm
the trial court's judgment. 

 Because the sufficiency of the evidence is not a contested issue on this appeal, only
a brief summary of the evidence is necessary. The murder victim, Bernabe Reveles Ramirez, and
his wife bought and sold used tools at a flea market near Austin. Appellant, a resident of
Lampasas County, had previously sold tools to Ramirez and Ramirez agreed to purchase a 
welding machine from appellant. One evening Ramirez and his wife drove to appellant's trailer
home in Lampasas County to obtain the welder but the bargain was not consummated that evening. 
On July 26, 1996, Ramirez, carrying more than $2,500, drove his truck to Lampasas intending
to obtain the welder. Bill Clark, an accomplice witness, testified that he and appellant met
Ramirez on the road just before Ramirez got to the place where appellant lived. Appellant got in
Ramirez's truck and they drove down a country road. Clark followed them in the car he was
driving. When they reached a secluded place on the road both vehicles stopped. Clark then saw
appellant shoot Ramirez while the two men were standing by the truck. Wounded and bleeding,
Ramirez rolled under the truck and ran into the woods. Appellant followed Ramirez and Clark
heard more shots. Appellant returned, got in Ramirez's truck and drove a short distance. When
the car Clark was driving had a flat tire, they left the car at the side of the road. Appellant and
Clark drove the truck to a carwash in Killeen. Appellant directed Clark to wash the truck. 
Appellant went to a nearby pay telephone and called for his stepdaughter's husband, Shane Still,
to come to the car wash. Still drove to the carwash and found appellant near the telephone.

 Appellant got in Still's car and told Still to follow the truck when it came out of the
carwash. Still recognized the truck because he had seen it one evening in the trailer park where
appellant lived. Appellant placed a gun between his legs and asked Still if he recognized the truck. 
Still said, "It's the Mexican guy's truck . . . did you kill him?" Appellant said, "What do you
think," raising his arms and showing Still blood on his shirt. Appellant told Still they were going
to drive the truck to Waco and burn it. Still testified concerning his conversation with appellant
during the time they were following Clark in the truck:

Q: All right. As best as you can remember, tell us what William Evans told
you.


A: He told me that they were both standing beside the -- right beside the
driver's side door of that truck -- that red truck. And he said the guy was
standing by the window and he was standing beside him right here. And
he said he shot him twice in the head, and the guy took off running, and
they chased him down. He said they chased him down and shot him three
more times. And he said he landed in a good spot. They didn't have to
move him, that he landed in a good spot.


Q: Tell me, if you can, the pistol that you saw that he was carrying when he
got in the car, had you ever seen that pistol before?


A: Yes, sir. It was a Star 380 -- or a Star 9 millimeter, 380.



 On the way to Waco, appellant obtained some gasoline with which to burn the
truck. However, it was decided that burning the truck would draw too much attention. The truck
was abandoned at a truck stop between Temple and Waco. The three men then returned to the
trailer park where Clark and appellant lived. During the drive, appellant gave $1,000 to Clark
to repay a debt. Appellant gave Still $200. The bills he gave Still had blood on them. Appellant
had $1,300. Still became very concerned that he would become involved in the murder
investigation. He expressed his concern to his mother, and she called the sheriff. Subsequent
events are recited in the search warrant affidavit which is attached to this opinion as an appendix.

 In his first three points of error, appellant asserts that the trial court erred in
overruling his motion to suppress and in admitting evidence that was unlawfully obtained in
violation of his federal and state constitutional rights and his state statutory rights. See U.S.
Const. amend. V; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. arts. 18.01, 18.02 (West
Supp. 1999). A pair of appellant's blood-spattered tennis shoes were obtained by officers armed
with a search warrant. An expert witness testified that DNA analysis of the blood on the tennis
shoes showed the blood was consistent with being the victim's blood. The expert agreed that the
blood stains on the "tennis shoes could have come from one out of every five Hispanics," "from
one out of every ten or eleven Caucasians," and that "about seven and-a-half percent of blacks
have that same DQ alpha type." The expert also agreed that there was a "good possibility that
there are two people in this courtroom today who have the same DQ alpha as what's on these
tennis shoes." The DNA evidence was not of great probative value. However, appellant argues
that this evidence was unlawfully obtained and that the DNA evidence corroborated Bill Clark's
accomplice witness testimony.

 Appellant urges generally that the affidavit for the search warrant was insufficient
to support a finding of probable cause. More specific complaints are incorporated in appellant's
argument, including: (1) the affidavit fails to address the credibility of Shane Still "whose
information is crucial to probable cause"; (2) the objects of the search were not described with
the particularity required; (3) the affidavit used was a "boilerplate type affidavit" form; and, (4)
the facts stated would not warrant a reasonable person to believe the items seized would be found
in the place searched. The Fourth Amendment provides that ". . . no warrants shall issue, but
upon probable cause, supported by oath or affirmation, and particularly describing the place to be
searched, and the persons or things to be seized." U.S. Const. amend. IV.

 Whether the facts alleged in a probable cause affidavit sufficiently support a search
warrant is determined by examining the totality of the circumstances. The probable cause
determination is simply a practical common sense decision whether, given the circumstances
described in the affidavit, there is a fair probability that the items that are the object of the search 
will be found in a particularly designated place. See Illinois v. Gates, 462 U.S. 213, 228-29
(1983); Ramos v. State, 934 S.W.2d 358, 362-63 (Tex. Crim. App. 1996); Hackleman v. State,
919 S.W.2d 440, 447 (Tex. App.--Austin 1996, pet. ref'd untimely filed). "The allegations are
sufficient if they would 'justify a conclusion that the object of the search is probably on the
premises.'" Ramos, 934 S.W.2d at 362-63 (quoting Cassias v. State, 719 S.W.2d 585, 587 (Tex.
Crim. App. 1996)). "The magistrate is permitted to draw reasonable inferences from the facts and
circumstances alleged." Ramos, 934 S.W.2d at 363; Gish v. State, 606 S.W.2d 883, 886 (Tex.
Crim. App. 1980). In determining whether an affidavit for a search warrant shows probable
cause, a reviewing court looks to the four corners of the affidavit. See Massey v. State, 933
S.W.2d 141, 148 (Tex. Crim. App. 1996); Doescher v. State, 578 S.W.2d 385, 387 (Tex. Crim.
App. 1978); Flores v. State, 888 S.W.2d 193, 197 (Tex. App.--Houston [1st Dist.] 1994, pet.
ref'd); Mayfield v. State, 800 S.W.2d 932, 934 (Tex. App.--San Antonio 1990, no pet.). 
"Statements made during the pretrial hearing do not factor into that determination." Massey, 933
S.W.2d at 148.

 Appellant finds no fault with the particularity of the description of the place to be
searched. The place searched was an apartment alleged to be in the charge and control of Troy
and Kelli Poole, William Evans, and Beth Thigpen. The apartment was leased by Troy and Kelli
Poole, and it was their residence. Prior to the time of the search, appellant and Beth Thigpen were
guests in the apartment for two days. The issue of consent for the search of the apartment was not
raised in the trial court. However, Kelli Poole consented or at least did not protest the search. 
She accompanied the searching officers and participated by showing the officers appellant's
property.

 Appellant's complaint that Shane Still was not shown to be a credible and reliable
informer is without merit. The credibility of an informer and the reliability of the informer's
information may be sufficiently buttressed by independent corroborating facts. See Polanco v.
State, 475 S.W.2d 763, 767 (Tex. Crim. App. 1972). Regardless of the sufficiency of an affidavit
as to the informer's reliability, the informer's information aided by independent corroborating
facts may be sufficient to establish probable cause. See Polanco v. Estelle, 507 F.2d 81, 82 (5th
Cir. 1975). Before making the probable cause affidavit, officers gained other facts corroborating
much of Still's information. The truck was found where Still said it had been left. The vent glass
was missing as Still had said. The vent glass was found with a bullet hole in it as Still had said. 
The scene of the murder and the location of the victim's body all corresponded with Still's
information. Much of the information furnished by Still was independently corroborated, showing
that Still was a credible and reliable informer.

 Appellant's complaint concerning the particularity of the description of the items
that were the object of the search is likewise without merit. The blood-spattered tennis shoes
seized in the search were included within the description in the affidavit as "clothing to include
footwear" and "clothing with blood." "In testing whether a specific warrant meets the
particularity requirement, a court must inquire whether an executing officer reading the description
in the warrant would reasonably know what items are to be seized." United States v. Kimbrough,
69 F.3d 723, 727 (5th Cir. 1995); United States v. Layne, 43 F.3d 127, 132 (5th Cir. 1995). "In
circumstances where detailed particularity is impossible, generic language is permissible if it
particularizes the types of items to be seized." Id. We conclude that the description of bloody
clothing, including footwear, in this affidavit, which was incorporated in the search warrant, was
sufficiently particular to meet constitutional standards and to allow the seizure of the blood-spattered shoes.

 Appellant also argues that the overly broad description of the items to be seized
allowed the searching officers discretion to make an unlawful general search and seizure. 
Appellant cites United States v. Fuccillo, 808 F.2d 173 (1st Cir. 1987). In that case officers
seized not only the allegedly stolen clothing but seized the entire contents of a clothing warehouse. 
It was shown that the facts known to the officers before they swore to an affidavit would have
allowed them to describe with particularity only that part of the clothing in the warehouse that had
been stolen. The facts in Fuccillo are quite different from those in this case. We conclude that
the objects of the search enumerated in the warrant, which incorporated the affidavit, were
described with the required particularity. If, however, the description "any items belonging to
Bernarde Reveles Ramirez" is too general and is defective, that description and those items are
severable and the entire warrant is not invalid. See Ramos, 934 S.W.2d at 363-64; Walthall v.
State, 594 S.W.2d 74, 78-79 (Tex. Crim. App. 1980).

 Appellant complains that the affidavit used was a "boilerplate-type affidavit." This
complaint is concerned with the request that "WHEREFORE, AFFIANT ASKS FOR THE
ISSUANCE OF A WARRANT THAT WILL AUTHORIZE THE SEARCH AND SEIZURE OF
THE ABOVE DESCRIBED CONTROLLED SUBSTANCE AND TO ARREST PERSONS, AND
TO TAKE CUSTODY OF ALL SEIZED PROPERTY AND SAFEKEEP SUCH PROPERTY IN
ACCORDANCE WITH THE LAW IN SUCH CASES PROVIDED." The affiant testified that
he used a printed affidavit form intended for use in obtaining warrants to search for controlled
substances and that he forgot to strike the quoted language. However, because the remainder of
the affidavit and warrant show that the warrant was issued to search for evidence relating to an
alleged murder, the quoted request is surplusage that may be disregarded.

 When the totality of the facts and circumstances found in this probable cause
affidavit are considered in their entirety they sufficiently support a conclusion that there was a fair
probability that the objects of the search would be found in the place searched. The trial court did
not abuse its discretion in finding that the affidavit supported a probable cause finding.

 Appellant's second and third points of error are concerned with his state
constitutional and statutory rights. See Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. arts.
18.01, 18.02 (West Supp. 1999). Appellant's argument is basically the same as that made in his
first point of error concerning his federal constitutional rights. However, appellant does not
explain how the protection offered by the Texas Constitution differs from that of the United States
Constitution. Therefore, we need not discuss separately the application of appellant's Texas
constitutional claims. See Ramos, 943 S.W.2d at 362 n.5; Johnson v. State, 853 S.W.2d 527, 533
(Tex. Crim. App. 1993).

 Appellant does call our attention to the fact that his invocation of state rights
"automatically invokes" the state statutory exclusionary rule. See Tex. Code Crim. Proc. Ann.
art. 38.23 (West Supp. 1999). The Court of Criminal Appeals has so held. See Imo v. State, 822
S.W.2d 635 (Tex. Crim. App. 1991). In Imo the reviewing court held the affidavit for a search
warrant deficient, but held the evidence need not be suppressed because of the officer's good faith
in obtaining a warrant. See also United States v. Leon, 468 U.S. 897 (1984). However, the court
of appeals in Imo failed to then consider and apply article 38.23 in connection with the defendant's
state rights. Imo, 822 S.W.2d at 636. In this case, unlike Imo, we hold the affidavit for the
search warrant shows probable cause for the issuance of the search warrant and that the appellant's
state constitutional and statutory rights were not violated. Therefore, article 38.23 need not be
applied. Appellant's first, second, and third points of error are overruled.

 In his fourth and fifth points of error, appellant insists that the trial court erred in
refusing to grant a mistrial when the State elicited testimony of an extraneous offense, especially
after the State failed to give written notice to appellant that such testimony would be offered by
the State in its case-in-chief. Appellant's complaint relates to the testimony of Shane Still on direct
examination as follows:


Q: And when was it that you came back to the Killeen area roughly?


A: About -- I'd say the end of March of '95.


Q: All right. Where did you live when you came back from Florida?


A: I lived with my mother.


Q: Okay. Was Heather with you?


A: I left Florida about a week before they did and came home first.


Q: Was there some reason that you came home before they did?


A: To try to make a little bit of money to get them up here to Texas.


Q: All right. To get a job, make some money and send to them or what?


A: I brought -- I brought about a pound of marijuana back from Florida with
me, and I was to sell that.


Q: Did you sell it?


A: Yes, sir.


Q: What did you do with the money?


A: I sent it to William and Beth and my wife to come back to Texas.


Q: Where did you get the marijuana from?


A: We got it in Florida.


Q: When you say "we got it," what do you mean "we got it"?


A: William took it from a guy in Florida.


[Defense Counsel]: Your Honor, I'm going to object to this. I'm going to ask

 -- I'm going to object on the basis that one, I think the State is simply
trying to bring in an extraneous offense to prejudice this defendant in front
of the jury.


 I would object on this on the basis that I have not received any notice under
Rule 404-B -- written notice from the State of his intent to offer this into
evidence so that I could make a proper objection.


 I further object to this on the basis that I don't think it's relevant to the facts
that this jury has to decide.


THE COURT: Do you wish to be heard?


MR. ALLISON: Your Honor, I -- you know, I didn't know who we was, and
I was just --


THE COURT: I sustain the objection.


[Defense Counsel]: Your Honor, I ask the jury be instructed to disregard the testimony regarding the marijuana or where the marijuana
came from.


THE COURT: The jury is instructed to disregard that testimony, not to
consider it now or during their deliberations.


[Defense Counsel]: Your Honor, I would ask for a mistrial.


THE COURT: Overruled.



 The trial court promptly responded by sustaining appellant's objection and
instructing the jury to disregard the testimony relating to the marijuana or where it came from. 
When a jury hears testimony referring to or implying that a defendant has committed an extraneous
offense, the trial court's instruction for the jury to disregard such testimony usually cures the
error, except in extreme cases where it appears that the evidence is clearly calculated to inflame
the minds of the jurors. See Kipp v. State, 876 S.W.2d 330, 339 (Tex. Crim. App. 1994) (even
when reference to extraneous offense was not inadvertent but specifically elicited by State); Kemp
v. State, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); Thompson v. State, 612 S.W.2d 925, 928
(Tex. Crim. App. 1981); Campos v. State, 589 S.W.2d 424, 427-28 (Tex. Crim. App. 1979);
McDonald v. State, 911 S.W.2d 798, 803 (Tex. App.--San Antonio 1995, pet. dism'd.). We have
considered Buchanan v. State, 911 S.W.2d 11 (Tex. Crim. App. 1995), Gilbert v. State, 808
S.W.2d 467 (Tex. Crim. App. 1991), and Smith v. State, 646 S.W.2d 452 (Tex. Crim. App.
1983), the cases cited by appellant, but we remain convinced that in the circumstances of this case
the trial court's sustention of appellant's objection and the court's jury instruction adequately
protected appellant's rights. The trial court did not err in refusing to grant a mistrial. Appellant's
fourth and fifth points of error are overruled.

 The trial court's judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Kidd, B. A. Smith and Dally*

Affirmed 

Filed: February 19, 1999

Do Not Publish















* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).

APPENDIX












 proper objection.


 I further object to this on the basis that I don't think it's relevant to the facts
that this jury has to decide.


THE COURT: Do you wish to be heard?


MR. ALLISON: Your Honor, I -- you know, I didn't know who we was, and
I was just --


THE COURT: I sustain the objection.


[Defense Counsel]: Your Honor, I ask the jury be instructed to disregard the testimony regarding the marijuana or where the marijuana
came from.


THE COURT: The jury is instructed to disregard that testimony, not to
consider it now or during their deliberations.


[Defense Counsel]: Your Honor, I would ask for a mistrial.


THE COURT: Overruled.



 The trial court promptly responded by sustaining appellant's objection and
instructing the jury to disregard the testimony relating to the marijuana or where it came from. 
When a jury hears testimony referring to or implying that a defendant has committed an extraneous
offense, the trial court's instruction for the jury to disregard such testimony usually cures the
error, except in extreme cases where it appears that the evidence is clearly calculated to inflame
the minds of the jurors. See Kipp v. State, 876 S.W.2d 330, 339 (Tex. Crim. App. 1994) (even
when reference to extraneous offense was not inadvertent but specifically elicited by State); Kemp
v. State, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); Thompson v. State, 612 S.W.2d 925, 928
(Tex. Crim. App. 1981); Campos v. State, 589 S.W.2d 424, 427-28 (Tex. Crim. App. 1979);
McDonald v. State, 911 S.W.2d 798, 803 (Tex. App.--San Antonio 1995, pet. dism'd.). We have
considered Buchanan v. State, 911 S.W.2d 11 (Tex. Crim. App. 1995), Gilbert v. State, 808
S.W.2d 467 (Tex. Crim. App. 1991), and Smith v. State, 646 S.W.2d 452 (Tex. Crim. App.
1983), the cases cited by appellant, but we remain convinced that in the circumstances of this case
the trial court's sustention of appellant's objection and the court's jury instruction adequately
protected appellant's rights. The trial court did not err in refusing to grant a mistrial. Appellant's
fourth and fifth points of error are overruled.

 The trial court's judgment is affirmed.