Opinion issued May 13, 2004










  
 


                                             
In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-01208-CR
____________
 
ARTHUR OUZENNE, JR., Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 212th District Court
Galveston County, Texas
Trial Court Cause No. 01 CR 1580
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Arthur Ouzenne, Jr., guilty of murder and assessed
punishment at 10 years in prison. In six points of error, appellant argues that the trial
court erred in (1) overruling appellant’s motion to suppress evidence, (2) overruling
appellant’s motion to challenge the array and strike the venire panel, (3) overruling
requests for a mistrial on two separate occasions, (4) overruling appellant’s Batson
challenge, and (5) refusing to admit testimony regarding the fight/flight response. We
affirm.
Background
          At approximately 10:00 p.m. on August 23, 2001, Danisha Cosey, Bobby
Shirley Jobe, Gregory Jobe, and Marcellous Jobe sat on the porch of the Jobe home
in Galveston, Texas. Blake Lyons, Matthew Whitney, and the complainant, Luciano
Zuniga, Jr., were playing basketball a few houses away from the Jobes’ house. 
Appellant’s sister, Robbie Ouzenne, was riding around the neighborhood with two
other boys. Appellant, who was angry about something that had been said to his
sister, approached the Jobe house from his father’s house carrying an aluminum
baseball bat. The complainant and appellant’s sister followed appellant to the Jobe
house. 
          When appellant arrived at the Jobes’ porch, he began to argue with Danisha
Cosey. The complainant attempted to intervene, and appellant struck him several
times in the head with the aluminum bat. Appellant, still carrying the baseball bat,
returned to his father’s house down the street.
          Bobby Shirley Jobe called the police, and, when the police arrived, the
witnesses told them that appellant had gone to his house. Appellant’s father, Arthur
Ouzenne, Sr. (Ouzenne) answered the door to the house and called his son to come
out and talk to the police. Appellant told the police that the bat was in the bathroom
of Ouzenne’s home, and both appellant and Ouzenne consented to the search of the
home. The police found an aluminum bat with blood on it. Appellant gave a
statement to the police. The complainant died a few days later from the injuries he
sustained during the assault.
          At trial, Bobby Shirley Jobe, Danisha Cosey, Gregory Jobe, Matthew Whitney, 
and Linda Jackson (who drove up to the scene just before the assault) all testified that
they saw appellant hit the complainant with the aluminum bat and then walk back to
Ouzenne’s house.
Motion to Suppress
          In his first point of error, appellant contends that the trial court erred in denying
his motion to suppress both his statement and any evidence obtained as a result of the
warrantless arrest. Appellant filed two motions to suppress—one seeking to suppress
his statement and one seeking to suppress what he argues was illegally-seized
evidence taken from his father’s home. 
          Under the Fourth and Fourteenth Amendments,


 a search conducted without
a warrant issued upon probable cause is “per se unreasonable . . . subject only to . .
. specifically established and well-delineated exceptions.” Schneckloth v.
Bustamonte, 412 U.S. 218, 93 S. Ct. 2041 (1973) (quoting Katz v. United States, 389
U.S. 347, 88 S. Ct. 507 (1967)). A search conducted with the consent of the suspect
is one such exception, so long as the consent is voluntary. Schneckloth, 412 U.S. at
219-23, 93 S. Ct. at 2043-46. The validity of an alleged consent to search is a
question of fact to be determined from all the circumstances. Ohio v. Robinette, 519
U.S. 33, 40, 117 S. Ct. 417, 421 (1996); Maxwell v. State, 73 S.W.3d 278, 281 (Tex.
Crim. App. 2002). The federal constitution requires the state to prove the validity of
the consent by a preponderance of the evidence; the Texas Constitution requires the
state to show by clear and convincing evidence that the consent was valid. Maxwell,
73 S.W.3d at 281. At a suppression hearing, the trial judge is the sole and exclusive
trier of fact and judge of the credibility of the witnesses and their testimony. Id. In
reviewing a trial court’s ruling on a motion to suppress, we give almost total
deference to a trial court’s determination of historical facts, and we review—de
novo—the court’s application of the law. Id.; see also Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997).
          Here, the trial court denied both motions to suppress, but the State only
introduced the bat that was found in the house. It did not introduce appellant’s
statement or the clothing that was recovered from Ouzenne’s house. 
          It is undisputed that there was no warrant to arrest appellant or search
Ouzenne’s house. The State argues, however, that the warrantless arrest was
permitted because both appellant and Ouzenne consented to the search of Ouzenne’s
house.
          Several witnesses testified during the suppression hearing. Galveston Police
Patrol Sergeant G. Gomez testified that, when he arrived at the scene of the assault,
“citizens [were] pointing that way, police [were] running, and they [were] pointing
at [Ouzenne’s] house. ‘He is in there. He is in there.’ And everybody is running that
way.” He testified that this case was a “hot pursuit” case. 
          Officer E. Cox testified during the suppression hearing that, when he arrived
at the scene of the assault, several of the witnesses told him that appellant had left the
scene and had gone to Ouzenne’s house. Officer Cox “put out an attempt to locate”
appellant, and the other officers went to Ouzenne’s house to make sure that appellant
did not escape further. Officer Cox testified that the witnesses had told him that a bat
had been used during the assault, and the bat that may have had blood on it had been
taken from the scene of the assault by appellant. Cox further testified that there was
a concern that the bat containing the blood would be washed or destroyed. Officer
R. Sunley, with the Galveston Police Department, testified during the suppression
hearing that he was called to the scene of the assault and told that the weapon had
been removed from the scene. Sunley testified that he went to the Ouzenne house,
and that he “Mirandized” appellant when appellant came out of Ouzenne’s house. 
Appellant told Sunley that he had struck the complainant with a bat after the
complainant lunged at him. Sunley asked appellant where the bat was, and appellant
told him it was in the bathroom. Sunley got appellant’s and Ouzenne’s permission
to enter the house to get the bat, and Sunley then found the bat, with fresh blood still
on it, in the house.
          Ouzenne testified during the suppression hearing that his house was surrounded
by policemen brandishing their weapons. The officers were “screaming. They were
in a panic rage.” He testified that, as his son came out of the house, Ouzenne raised
his hand to stop his son. An officer said, “Do you know you are interfering with an
arrest? You can be arrested.” So, Ouzenne lowered his hand, and his son walked to
the police. Ouzenne testified that Officer Sunley asked appellant where the bat was,
and appellant told him that it was in the restroom in the house. Ouzenne testified that
he gave the officers permission to enter his house and recover the bat. 
          Under these circumstances, the trial court was justified in finding that appellant
and his father had consented to the search of Ouzenne’s home, which resulted in the
discovery of the murder weapon. We hold that the trial court did not abuse its
discretion when it denied appellant’s motion to suppress. Accordingly, we overrule
point of error one.
Venire
          In points of error two and four, appellant argues that the trial court erred in
overruling appellant’s challenge to the array and request to strike the venire panel and
in overruling appellant’s Batson challenge.
Challenge to Array/Request to Strike Venire
          In his second point of error, appellant argues that the trial court erred when, on
proper motion by appellant to challenge the array and strike the venire panel, the trial
court overruled the motion, after hearing evidence and argument.
          Article 35.07 of the Texas Code of Criminal Procedure states in full: 
Each party may challenge the array only on the ground that the officer
summoning the jury has wilfully summoned jurors with a view of
securing a conviction or an acquittal. All challenges must be in writing
setting forth distinctly the grounds of such challenge. When made by the
defendant, it must be supported by his affidavit or the affidavit of any
credible person. When such challenge is made, the judge shall hear
evidence and decide without delay whether or not the challenge shall be
sustained. 
 
Tex. Crim. Proc. Ann. § 35.07 (Vernon 1989) (emphasis added). 
          Before voir dire, appellant filed a written motion challenging the array, which
included an unsigned affidavit from appellant. However, the record does not reflect
that the requisite signed affidavit ever accompanied the motion. An instrument that
is not sworn to is not supported without an affidavit. Garcia v. State, 919 S.W.2d
370, 392 (Tex. Crim. App. 1996) (op. on reh’g). If there is no affidavit, nothing is
preserved for appellate review. See Brokenberry v. State, 853 S.W.2d 145, 149 (Tex.
App.—Houston [14th Dist.] 1993, pet. ref’d).
          We overrule point of error two.
Batson Challenge
          In point of error four, appellant argues that the trial court erred in refusing to
order a new jury panel and in refusing to “disallow the State’s peremptory strikes 
because of racial discrimination” after the State struck four African-American
members of the venire.
          Standard of Review
          Appellate courts review the trial court’s ruling on a Batson


 motion under the
clearly erroneous standard of review by examining the evidence in the light most
favorable to the trial court’s ruling. Pondexter v. State, 942 S.W.2d 577, 581 (Tex.
Crim. App. 1996). To determine whether a decision is clearly erroneous, the record
is examined to see whether the ruling reveals the “definite and firm conviction that 
a mistake has been committed.” Guzman v. State, 85 S.W.3d 242, 254 (Tex. Crim.
App. 2002). There is a three-step process to a Batson challenge: (1) a defendant 
must make a prima facie showing that a peremptory challenge has been exercised on
the basis of race, (2) if the showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question, and (3) the trial court must determine
whether the defendant has shown purposeful discrimination. Miller-El v. Cockrell,
537 U.S. 322, 328-29, 123 S. Ct. 1029, 1035 (2003); Batson, 476 U.S. at 96, 106 S.
Ct. at 1722. The exercise of even one racially-motivated peremptory strike
invalidates the jury selection process and requires a new trial. Whitsey v. State, 796
S.W.2d 707, 716 (Tex. Crim. App. 1989). If the State offers a race-neutral
explanation before any inquiry on the prima facie case, the issue of a prima facie case
is moot. See Simpson v. State, 119 S.W.3d 262, 268 (Tex. Crim. App. 2003).
          Race-Neutral Explanation
          An explanation for a peremptory strike is deemed race-neutral so long as no
discriminatory intent is inherent in the explanation given, even if the explanation is 
fantastic or implausible. Williams v. State, 937 S.W.2d 479, 485 (Tex. Crim. App.
1996). In response to appellant’s Batson challenge to the State’s use of peremtory
strikes on four veniremembers, Jonah William, Reginald Colbert, Charles Matthews,
and Latonya Bates, the State explained that it struck William and Colbert because
both men said that they could not “sit in judgment.” Matthews was struck because
he was confused about the issue of verbal provocation and whether or not that would
be enough, and because he could not consider the full range of punishment. The State
explained that it struck Bates because she had been a juror in a previous case where
the jury had returned a verdict of “not guilty.” Thus, State gave race-neutral
explanations for its strikes, to which appellant’s counsel offered no response. 
          Purposeful Discrimination
          After the State met its burden of presenting race-neutral explanations for its
use of its challenged peremptory strikes, the burden to show purposeful discrimination
shifted back to appellant to impeach or refute the State’s neutral explanations or to
show that they were merely a pretext. Salazar v. State, 795 S.W.2d 187, 192 (Tex.
Crim. App. 1990). Here, appellant’s counsel had no response to the State’s
explanations for striking William, Colbert, Matthews, or Bates. By not refuting the 
State’s race-neutral reasons, appellant forfeited this issue on appeal. Flores v. State,
33 S.W.3d 907, 926 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d).
          We overrule appellant’s fourth point of error.
Mistrial
          In points of error three and five, appellant argues that the trial court erred in
refusing to grant a mistrial when (1) during the cross-examination of appellant’s
father, the State asked the witness “And you created—you created your son, the
monster that he is” and (2) appellant discovered, during trial, that the State had failed
to disclose favorable evidence.
Standard of Review
          A trial court’s denial of a motion for mistrial is reviewed under an abuse of
discretion standard. Wood v. State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). A
mistrial is appropriate for only “highly prejudicial and incurable errors.” Id. It may
be used to end trial proceedings when the trial court is faced with error so prejudicial
that “expenditure of further time and expense would be wasteful and futile.” Id. The
Court of Criminal Appeals has held that “ordinarily, a prompt instruction to disregard
will cure error associated with an improper question and answer.” Ovalle v. State, 13
S.W.3d 774, 783 (Tex. Crim. App. 2000). A trial court is required to grant a motion
for a mistrial only when the improper question is “clearly prejudicial to the defendant
and is of such character as to suggest the impossibility of withdrawing the impression
produced on the minds of the jurors.” Wood, 18 S.W.3d at 648.
Prosecutor’s Improper Statement
          During the guilt/innocence stage, the prosecutor cross-examined appellant’s
father, Arthur Quzenne, Sr. as follows:
          Q:      Your son snapped, didn’t he.
          A:      That’s what you say.
          Q:      You push him, don’t you.
          A:      What you [sic] mean, push him?
          Q:      Well, I mean you push him to work out every day. You
want him to be a football hero. That’s your ultimate goal,
isn’t it, Mr. Ouzenne?
 
          A:      Nope, nope.
          Q:      And you created — you created your son, the monster that
he is.

The trial court sustained appellant’s objection to this comment, and it instructed the
jury to disregard such remark. During the bench conference, outside the presence of
the jury, the trial court warned the prosecutor, concerning his questioning, that “If you
do it again, you will get held in contempt.” Still outside the presence of the jury, the
trial court explained that it was persuaded by the following excerpt from Hardin v
State, 20 S.W.3d 84 (Tex. App.—Texarkana 2000, pet. ref’d): “Bauder


 should not
be read, however, as sanctioning the conduct of zealous advocates who skate close
to the ragged edge of improperly prejudicing the jury. Rather, the court’s comments
must be understood as expressing a strong preference for completing the trial, as long
as the trial remains fair.” Id. at 93. The trial court denied appellant’s motion for
mistrial, but again warned the prosecutor not to “test me on that because the next
motion for mistrial may be granted.” 
          The evidence admitted during the guilt/innocence phase showed that Bobby
Shirley Jobe, Danisha Cosey, Gregory Jobe, Matthew Whitney, and Linda Jackson
all saw appellant hit the complainant with a bat. Officer Sunley testified that he
found a bat in appellant’s house, and that the bat was used as a deadly weapon. All
of this evidence was received before the prosecutor referred to appellant as a
“monster.”
          After reviewing the nature and extent of the evidence against the appellant, as
well as the trial court’s prompt instruction to the jury to disregard the prosecutor’s
reference to appellant as a “monster,” we conclude that the instruction cured any
prejudice flowing from the prosecutor’s improper statement. As a result, the trial
court did not abuse its discretion in overruling the appellant’s motion for mistrial. 
 We overrule point of error three.
Brady Violation
          In point of error five, appellant claims that the trial court erred in refusing to
grant a mistrial when it was discovered that the State had committed a Brady
violation by failing to reveal that Marcellous Jobe’s testimony was unfavorable to its
case. See Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963).
          In Brady, the Supreme Court held that the State’s suppression of material
evidence favorable to the accused, upon the accused’s request for the evidence, denies
the accused due process of law under the Fourteenth Amendment, irrespective of the
State’s good or bad faith in withholding the evidence. Id., 373 U.S. at 86-88, 83 S.
Ct. at 1196-97; see U.S. Const. amend. XIV. Withheld evidence is material if there
is a reasonable probability that the proceeding’s outcome would have differed had the
evidence been disclosed. United States v. Bagley, 473 U.S. 667, 681-82, 105 S. Ct.
3375, 3383-84 (1985). When the withheld evidence is disclosed during trial, the
inquiry is thus whether the defendant was prejudiced by the tardy disclosure. Palmer
v. State, 902 S.W.2d 561, 565 (Tex. App.—Houston [1st Dist.] 1995, no pet.).
          Here, when the State rested its case during the guilt/innocence stage, appellant
moved for a mistrial based on the State’s failure to disclose evidence favorable to
appellant. The trial court excused the jury and allowed appellant’s attorney to voir
dire Marcellous Jobe, the alleged exculpatory witness. Jobe testified that he had seen
the complainant and Matt Whitney playing baseball before dark on the night that the
murder occurred.


 Ralph Mutchler, an investigator with the Galveston County
District Attorney’s Office, also testified outside the presence of the jury. Mutchler
testified that Jobe told him that appellant was the only one with a bat during the
assault. He testified that, 30 to 45 minutes before the complainant was assaulted,
Jobe saw boys playing baseball with a bat. The trial court denied the motion for
mistrial. Despite the fact that the motion was denied, the State offered to reopen its
case and call Jobe as a witness. Appellant’s trial counsel denied the offer and then
called Jobe to testify as the first witness for the defense. Jobe testified that appellant
was the only one with a bat during the assault, and Jobe had seen the boys playing
baseball only during the daylight hours.
          Here, Jobe’s testimony was not favorable to appellant. He testified that
appellant was the only one with a bat during the assault. Therefore, Jobe’s testimony
was not exculpatory evidence and the State was not required to disclose Jobe’s
testimony to appellant’s counsel before trial. 
          We overrule point of error five.
                                               Exclusion of Evidence
          In point of error six, appellant contends that the trial court erred in excluding
Dr. Wendle Dickerson’s testimony regarding fight/flight responses.
          We review the decision to exclude evidence for abuse of discretion. Green v.
State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996). The test for abuse of
discretion is whether the court acted without reference to any guiding rules and
principles by acting arbitrarily or unreasonably. Galliford v. State, 101 S.W.3d 600,
604 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d).
          During the guilt/innocence stage, appellant attempted to call his expert
psychologist, Wendle Dickerson, Ph.D., to testify. The State informed the trial court
that it had no notice of the witness and wanted to conduct a voir dire examination to
determine the gravamen of his testimony. Outside the presence of the jury, Dickerson
testified that he had not questioned appellant “in depth about the specific incident.” 
He acknowledged that he could not testify about the reasonableness of appellant’s
behavior on the night of the assault because Dickerson did not “have a foundation for
reaching a conclusion.” The State objected to Dickerson’s anticipated testimony,
contending that Dickerson’s testimony on fight/flight amounted to a direct comment
on the mental state of appellant at the time of the offense. The attorneys for both
sides argued their positions, and the trial court excluded the testimony. Appellant
made a bill of exception, during which Dickerson testified regarding the differences
between the transcendental or relaxed state and the instinctual or aroused state of
being. At the conclusion of the bill, appellant’s attorney explained to the trial court
that Dickerson had interviewed appellant and had made some observations. 
Appellant’s counsel argued that, if permitted to testify, Dickerson would testify
regarding “his observations of [appellant’s] mental state during his interview with
[appellant] that he was under stress, he was — you know, what type of mental state
he was in. I mean, he would be basically, you know, like a fact witness.” The State
objected because “the mental state at the time of any interview with an expert
subsequent to this offense is completely irrelevant to this case.” The trial court
refused to allow the testimony.
          Except when a defendant’s sanity is at issue, expert testimony regarding a
defendant’s state of mind at the time of the offense is inadmissible during the
guilt/innocence phase of trial. Duren v. State, 87 S.W.3d 719, 734 (Tex.
App.—Texarkana 2002, no pet.); Osby v. State, 939 S.W.2d 787, 790 (Tex.
App.—Fort Worth 1997, pet. ref’d). Moreover, it appears from the record that
appellant’s counsel attempted to introduce Dickerson’s testimony regarding
appellant’s mental state during the interview, which was subsequent to the offense
and was, thus, irrelevant under these circumstances. Therefore, we hold that the trial
court did not abuse its discretion in refusing to allow Dickerson’s testimony regarding
appellant’s mental state. 
          We overrule point of error six.
 
 
 
Conclusion
          We affirm the judgment of the trial court.

 

                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Justices Taft, Hanks, and Higley.

Do not publish. Tex. R. App. P. 47.2(b).