Daimion Demon OSBY, Appellant,

v.

The STATE of Texas, State.

No. 2–94–515–CR.

Court of Appeals of Texas,
Fort Worth.

Feb. 13, 1997.

Robert Ford, Fort Worth, for appellant.

Tim Curry, Criminal District Attorney, Betty Marshall and Charles M. Mallin, Assistant Chiefs of the Appellate Section, Tanya S. Dohoney, Assistant Criminal District Attorney, Renee Harris, Assistant Criminal District Attorney, and Suzanne Hudson, Assistant Criminal District Attorney, Fort Worth, for State.

Before CAYCE, C.J., and DAY and LIVINGSTON, JJ.

## OPINION

LIVINGSTON, Justice.

Appellant Daimion Demon Osby was convicted of capital murder for killing two unarmed men who were—at the time of the shooting—being held back by his friends. Osby confessed to shooting both victims and does not challenge the sufficiency of the evidence to support his conviction. Rather, his appeal centers around his claim of self-de-

fense. In two points of error, Osby complains that the trial court improperly excluded his psychologist's expert testimony concerning his state of mind at the time he committed the offense. Because we hold the trial court properly excluded the expert testimony, we affirm the conviction.

## BACKGROUND FACTS

The pertinent background facts are as follows: The killings occurred on April 18, 1993. About a year earlier, Osby and Willie Brooks, one of the victims, were involved in a gambling game. Osby won $400 from Willie and left the game, taking the money with him. Willie objected, saying Osby could not just leave the game with Willie's money. Osby left anyway, unafraid of Willie and thinking that would be the end of the matter.

Five or six months passed, during which Osby did not have any contact with Willie. Then, one day, Osby came out of the store at a Shamrock service station as Willie and Marcus Brooks, the other victim, pulled into the gas station. Osby tried to avoid Willie and Marcus, but Willie called to him. When Osby stopped, Willie approached him and said "he had to run up in [Osby's] house to get what [Osby] owed him." Osby turned and went home. Osby did not see anyone follow him home.

Still more time passed, during which Osby, Willie, and Marcus had no contact. One day around Christmas 1992, Osby and some of his friends were playing in a basketball tournament. Willie and Marcus came to the tournament, and they and Osby got into a fistfight. During that fight, Osby felt like he was "taking care" of himself. After the fight, Osby was angry and scared, but he was not afraid for his life. He also was not afraid enough to stop his normal activities, such as hanging out in Sycamore Park or on Miller Street.

Osby had no further contact with Willie and Marcus between December 1992 and April 1993. However, in February 1993,

Osby got himself a gun for "protection" from Willie and Marcus. Osby began carrying the gun with him unless he was with friends who also had a gun.

In early April 1993, Osby was sitting at a stoplight at the intersection of Miller Street and Berry Street in Fort Worth. Osby saw Willie and Marcus also pull up to the stoplight, in another lane and a little behind him. Osby was sure that Willie and Marcus saw him. After the light turned green, Osby took off very fast. Eventually, Willie and Marcus pulled up beside Osby and asked him to pull his car over. Osby refused, claiming that he saw the barrel of a gun in Willie and Marcus' truck. When Osby refused to stop, Willie and Marcus began chasing him.[1] Osby lost them, drove to his brother-in-law's house, and asked for a gun. Osby's brother-in-law would not give Osby a gun, nor did he want Osby to leave the house in his current frame of mind. Osby remained at his brother-in-law's house for awhile and then went home.

On the evening of April 18, 1993, as was their custom, Osby and three of his friends were "hanging out" among a large crowd of people and cars in a parking lot on Miller Street. Osby had his gun with him, concealed in his back pocket. During the evening, Willie and Marcus pulled into the parking lot in their truck, bumping Osby on the leg. When Osby saw the truck, he said, "[M]an, I need to get them off me. I need to kill that fool or something, man."

Osby and Marcus exchanged words, after which Marcus got out of the truck, and he and Osby began throwing punches at each other. When Willie started to join in the fight, Osby's friends held Willie back to keep the fight "one on one." At various points during the fight, Osby's friends pulled Willie and Marcus off of him. When it appeared that Marcus was winning the fight, Osby's friends stopped the fray by grabbing Willie and Marcus. One friend was even standing between Marcus and Osby. At this point, the shooting started. Osby pulled his gun

---

1. The first time Osby mentioned seeing a gun was at trial. No gun is mentioned in the statement Osby signed and gave to police, even though the chase scene itself is mentioned. In addition, Osby told three friends about the chase but admitted he did not mention seeing a gun barrel to two of them. The third friend testified that Osby did not mention a gun to him either, although Osby claimed otherwise.

from his pocket, stepped to the side of his friend who was restraining Marcus, and shot Marcus in the head. Osby then went to the back of Willie's truck, where another friend was restraining Willie. Osby then shot Willie in the head at close range. The record shows that Osby fired his gun one to two feet from each victim's skull.

Osby claimed that he feared for his life during the April 18 incident and killed the two victims in self-defense. However, Osby did not see any weapons on either of the victims during the entire fistfight and, as previously noted, was receiving considerable help in the fight itself from his friends. After the shootings, Osby left the scene, went with some friends to Taco Bell, and later turned himself in to the police.

At trial, Osby was allowed to put on extensive evidence about his prior relationship with and fear of Willie and Marcus. He also sought to admit expert testimony about his mental state at the time he committed the offenses. Osby proffered the testimony of Dr. Raymond Finn, a psychologist, who would have opined that, at the time of the shootings, Osby had "some" symptoms of post-traumatic stress disorder (PTSD) but not enough to allow Dr. Finn to make a diagnosis of PTSD. Because Osby's self-defense theory was not grounded in alleged acts of family violence, the trial court did not allow Dr. Finn to give this testimony. *See* TEX.CODE CRIM.PROC.ANN. art. 38.36(b) (Vernon Supp.1997).

In his first point of error, Osby complains the trial court erred in excluding Dr. Finn's testimony at the guilt-innocence phase of trial. In point of error two, Osby contends the trial court's refusal to admit the expert testimony denied him his Sixth Amendment right to present a defense.

### ADMISSIBILITY OF EXPERT TESTIMONY UNDER ARTICLE 38.36(b)

A trial court's ruling on the admissibility of evidence is subject to an abuse of discretion standard on appeal. *Duckett v. State,* 797 S.W.2d 906, 910 (Tex.Crim.App.1990), *overruled on other grounds, Cohn v. State,* 849 S.W.2d 817 (Tex.Crim.App.1993). An abuse of discretion will be found "only when the

trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State,* 842 S.W.2d 667, 682 (Tex.Crim.App. 1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993). Even if the trial court's reason for its ruling is incorrect, the ruling will be upheld if it is permissible under any theory applicable to the case. *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim.App.1990).

Osby's contention at trial and on appeal is that he was entitled to put on expert testimony concerning his state of mind at the time he committed the killings. As support for his position, Osby relies on article 38.36(b) of the Texas Code of Criminal Procedure and *McClure v. State,* 575 S.W.2d 564, 566–67 (Tex.Crim.App. [Panel Op.] 1979). We will limit our discussion to article 38.36 because the Court of Criminal Appeals overruled *McClure* in 1986. *See Werner v. State,* 711 S.W.2d 639, 646 (Tex.Crim.App.1986), *modified on other grounds, Hamel v. State,* 916 S.W.2d 491 (Tex.Crim.App.1996).

Article 38.36 provides:

(a) In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

(b) In a prosecution for murder, if a defendant raises as a defense of justification provided by Section 9.31, 9.32, or 9.33, Penal Code, the defendant, in order to establish the defendant's reasonable belief that use of force or deadly force was immediately necessary, shall be permitted to offer:

(1) relevant evidence that the defendant had been the victim of acts of family violence committed by the deceased, as family violence is defined by Section 71.01, Family Code; and

(2) relevant expert testimony regarding the condition of the mind of the

defendant at the time of the offense, including those relevant facts and circumstances relating to family violence that are the basis of the expert's opinion.

TEX.CODE CRIM.PROC.ANN. art. 38.36 (Vernon Supp.1997).

Both Osby and the State agree that the reference in article 38.36(b) to expert testimony is a codification of *Fielder v. State,* 756 S.W.2d 309 (Tex.Crim.App.1988). Osby contends, however, that expert testimony concerning the defendant's state of mind at the time of the offense is admissible under article 38.36(b) *any time* a defendant raises self-defense in a murder case. The State, on the other hand, asserts that this type of expert testimony is admissible under article 38.36(b) only where the defendant offers evidence that he was a victim of family violence at the hands of the deceased.

■ We agree with the State that expert testimony is admissible under article 38.36(b) only when the defendant (1) raises self-defense as a defense and (2) establishes that he was a victim of family violence at the hands of the deceased. There are several bases for our conclusion.

First, we consider the Court of Criminal Appeals' holding in *Fielder.* In that case, the Court of Criminal Appeals held that expert testimony about the psychological effects of *marital abuse* is relevant to a defendant's claim of self-defense because the expert testimony could assist the jury in its decision concerning whether the defendant reasonably believed that deadly force was immediately necessary to protect herself. *Fielder,* 756 S.W.2d at 318–20; *see also Ortiz v. State,* 834 S.W.2d 343, 344 n. 4 (Tex.

Crim.App.1992). Thus, *Fielder's* holding is much more narrow than the rule of law Osby urges us to adopt.

■ Second, we consider the statute itself. In construing a statute, we look to the purpose of the legislature, focusing on the text of the statute itself and interpreting it in a literal manner, attempting to discern the fair, objective meaning of the text. *State v. Mancuso,* 919 S.W.2d 86, 87 (Tex.Crim.App. 1996); *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991). We are to read the words and phrases in context according to the rules of grammar and common usage. TEX.GOV'T CODE ANN. § 311.011(a) (Vernon 1988). When examining amendments to existing legislation, such as in this case, we presume that the legislature was aware of case law affecting or relating to the statute. *Grunsfeld v. State,* 843 S.W.2d 521, 523 (Tex. Crim.App.1992).

When *Fielder* was decided, what is now article 38.36 was located in section 19.06 of the Texas Penal Code. At that time, section 19.06 was virtually identical to current article 38.36(a). *See Fielder,* 756 S.W.2d at 318 & n. 6.[2] Thereafter, in 1991, the legislature amended section 19.06 to add what is now article 38.36(b).[3] The addition of both subsections (b)(1) and (b)(2) in the same amendment is some indication that the legislature intended expert testimony about the defendant's state of mind to be admissible only in cases where the deceased had previously committed acts of family violence against the accused.

Far more indicative of the legislature's intent is the language of article 38.36. Even before the addition of subsection (b)(1), a

---

**2.** At the time *Fielder* was decided, section 19.06 provided:

> In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

See Act of May 28, 1973, 63rd Leg., R.S., ch. 426, 1973 Tex.Gen.Laws 1123, 1124 (current ver-

sion at TEX.CODE CRIM.PROC.ANN. art. 38.36(a) (Vernon Supp.1997)).

**3.** See Act of April 17, 1991, 72nd Leg., R.S., ch. 48, § 1, 1991 Tex.Gen.Laws 474, 475, *repealed by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 7.03, 1993 Tex.Gen.Laws 3764, 3764 (current version at TEX.CODE CRIM.PROC.ANN. art. 38.36(b) (Vernon Supp.1997)).

After the 1991 amendments, section 19.06 was identical to current article 38.36, except section 19.06 applied to all prosecutions for manslaughter, as well as murder. *Id.* This slight variation has no bearing on our opinion.

defendant could offer relevant evidence that he had been a victim of acts of family violence committed by the deceased, under former Penal Code section 19.06(a) (current article 38.36(a)). Such evidence might contain "relevant facts and circumstances surrounding ... the previous relationship existing between the accused and the deceased" and might also include "relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense." *See* TEX.CODE CRIM.PROC.ANN. art. 38.36(a) (Vernon Supp.1997). Thus, article 38.36(b)(1) is unnecessary, except as an aid to interpreting the legislature's intent regarding what type of expert testimony is admissible under article 38.36(b)(2). Looking to the plain and common meaning of the words used in article 38.36 as a whole, we conclude that the legislature intended such expert testimony to be admissible only when the expert's opinion about the defendant's mental state is based on acts of family violence committed by the deceased against the defendant. *See, e.g.,* 1 STEVEN GOODE et al., *Guide to the Texas Rules of Evidence: Civil and Criminal* § 404.4, at 156 n. 2 (2d ed. 1993) (subsection (b) was added "[p]resumably to make clear that the legislature favors the admissibility not only of prior acts of aggression by the deceased against the defendant but also expert testimony such as that concerning 'battered wife syndrome' ").

Third, Osby's position is completely unsupported by Texas case law. Osby would have us hold that a criminal defendant is entitled to put on expert testimony regarding his state of mind *every time* a defendant raises a self-defense theory. This has never been the law in Texas, either before or after *Fielder* was decided and codified.

Before *Fielder,* except when a defendant's sanity was at issue, Texas courts applied the long-standing rule that testimony from a witness other than the defendant concerning his mental state at the time of the offense was inadmissible at the guilt-innocence phase of trial. *See, e.g., Jackson v. State,* 548 S.W.2d 685, 692–93 (Tex.Crim.App.1977) (trial court properly refused to permit psychiatrist to

testify regarding defendant's state of mind at time of alleged offense); *Winegarner v. State,* 505 S.W.2d 303, 305 (Tex.Crim.App. 1974) (trial court properly refused to allow psychiatrist to give opinion regarding defendant's state of mind at time of alleged offense), *overruled on other grounds, White v. State,* 576 S.W.2d 843 (Tex.Crim.App.1979); *Whitmire v. State,* 789 S.W.2d 366, 372 (Tex. App.—Beaumont 1990, pet. ref'd) (trial court properly refused to allow physician to testify regarding defendant's state of mind before and after shooting); *see also Arnold v. State,* 853 S.W.2d 543, 547 (Tex.Crim.App.1993) (reaffirming *Jackson, Winegarner,* and *Whitmire* ).

*Fielder* carved out a narrow exception to this rule, which is limited to family violence cases in which the defendant raises self-defense. The only court since *Fielder* to apply the post-*Fielder* legislation has likewise held that expert testimony is inadmissible when a defendant raises self-defense, unless the defendant first establishes that he was a victim of family violence at the hands of the deceased. *McDonald v. State,* 911 S.W.2d 798, 802 (Tex.App.—San Antonio 1995, pet. dism'd) (holding that, unless defendant establishes factual predicate of subsection (b)(1), proferred expert testimony is irrelevant and inadmissible under subsection (b)(2)).[4] We agree with the San Antonio Court of Appeals. Because Osby did not establish that he was a victim of family violence at the hands of the two decedents, he was not entitled to put on expert testimony concerning his state of mind at the time of the killings. Consequently, the trial court properly excluded Dr. Finn's testimony about Osby's state of mind under article 38.36.

### THE EVIDENCE DOES NOT RAISE SELF-DEFENSE

■ Osby argues expert testimony should have been admitted to support his self-defense theory. The State argues that, although the issue of self-defense was submitted to the jury, self-defense was not raised by the evidence presented at trial. We agree.

---

**4.** The *McDonald* court applied TEX.PENAL CODE ANN. § 19.06(b), noting that it had been recodified as TEX.CODE CRIM.PROC.ANN. art. 38.36(b). *McDonald,* 911 S.W.2d at 800 & n. 1.

The trial court charged the jury on self-defense as follows:

By the term "reasonable belief" as herein used is meant a belief that would be held by an ordinary and prudent person in the same circumstances as the Defendant.

By the term "deadly force" is meant force that is intended or known by the person using it to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury.

Upon the law of self-defense you are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

The use of force against another is not justified in response to verbal provocation alone.

A person is justified in using deadly force against another if he would be justified in using force against the other as described above; *and if a reasonable person in the Defendant's situation would not have retreated;* and when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. [Emphasis added.] [5]

█ Notably, there is no evidence in the record that a reasonable person in Osby's situation would not have retreated. *See* TEX.PENAL CODE ANN. § 9.32(a)(3)(A) (Vernon Supp.1997). In circumstances in which a reasonable person would have retreated, if there is no evidence that the defendant attempted to retreat, the evidence does not raise self-defense. *Coble v. State,* 871 S.W.2d 192, 202 (Tex.Crim.App.1993), *cert. denied,* 513 U.S. 829, 115 S.Ct. 101, 130 L.Ed.2d 50 (1994); *Werner,* 711 S.W.2d at 644–45. Use

of deadly force is justified only when retreat is unreasonable. *Juarez v. State,* 886 S.W.2d 511, 513–14 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd).

In this case, Willie and Marcus were both unarmed and were being physically restrained by Osby's friends at the time he shot them. The evidence also shows that an avenue of retreat was available to Osby. One of Osby's friends testified that, at the time of the shootings, nothing was preventing Osby from leaving the Miller Street parking lot. Indeed, immediately after shooting Willie and Marcus, Osby ran to the corner of the parking lot and got into the car of a friend who took him home. Under these circumstances, a reasonable person would have retreated instead of using deadly force.

Because Osby did not retreat or attempt to retreat until after he had shot both men, the evidence does not raise the retreat element of self-defense. Because self-defense was not supported by the evidence anyway, the excluded expert testimony was not relevant to any issue in the case; therefore, the trial court did not err in excluding it although Osby received a jury instruction on this issue. *Werner,* 711 S.W.2d at 645. Point of error one is overruled.

## THE EXCLUSION OF THE EVIDENCE DID NOT VIOLATE THE SIXTH AMENDMENT

█ In point of error two, Osby complains that the trial court's erroneous exclusion of the expert's testimony regarding his state of mind denied him his Sixth Amendment right to present a defense. In response to point of error one, we held that the trial court's ruling regarding this testimony was proper because the proferred testimony was inadmissible under article 38.36(b) and because the defense was not raised by the evidence. It goes without saying that a trial court does not violate a defendant's constitutional rights

---

5. These jury instructions track the pertinent provisions of §§ 9.31 and 9.32 of the Texas Penal Code on self-defense that were in effect at the time of Osby's trial. *See* TEX.PENAL CODE ANN. § 9.31 (Vernon 1994); *see also* Act of May 23, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen.Laws 883, 901, *amended by* Act of May 27, 1983, 68th Leg., R.S., ch. 977, § 5, 1983 Tex. Gen.Laws 5316, 5316–17; Act of May 29, 1993,

73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen. Laws 3586, 3598; and Act of May 16, 1995, 74th Leg., R.S., ch. 235, § 1, 1995 Tex.Gen.Laws 2141, 2141 (current version at TEX.PENAL CODE ANN. § 9.32(a) (Vernon Supp.1997)).

Because none of the amendments to § 9.32 are substantive, we refer to the current version of this statute throughout our opinion.

by excluding inadmissible evidence. Point of error two is overruled.

The trial court's judgment is affirmed.