In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No.
06-10-00104-CV

                                                ______________________________

 

 

 

                                               IN
RE:  DAVID ALAN SHEPHERD

 

 

                                                                                                  


 

                                                                                                                            


                                                     Original
Mandamus Proceeding

 

                                                                                                  


 

 

 

 

                                          Before
Morriss, C.J., Carter and Moseley, JJ.

                                            Memorandum
Opinion by Justice Moseley

                                                                              

                                                                              








                                                     MEMORANDUM 
OPINION

 

            David Alan Shepherd has filed a
petition for writ of mandamus in which he asks this Court to order the judge of
the 188th Judicial District Court of Gregg County to supply him with a copy of
documents in connection with his appeal from a judgment against him in his
lawsuit against Office Depot and the United Parcel Service (UPS).  Specifically, Shepherd asks us to order the
trial judge to supply him with a transcription of a hearing held on June 28,
2010, with findings of fact and conclusions of law on the dismissal of his
case, and with a filed copy of his answer to UPS’s “motion for dismissal and
joinder of motion for dismissal pursuant to C.P.R.C. 14.003.”  

            We grant the extraordinary relief of
mandamus only when the trial court has clearly abused its discretion or
violated a duty imposed by law, and the relator lacks an adequate appellate
remedy.  In re Team Rocket, L.P., 256 S.W.3d 257 (Tex. 2008) (orig. proceeding).

            It is the responsibility of the
relator to submit with the petition seeking the extraordinary relief an
appendix containing a sworn copy of any order complained of, or any other
document showing the matter complained of. 
Tex. R. App. P. 52.1,
52.3(k)(1)(A).  The petition must be
accompanied by a certified or sworn copy of every document material to the relator’s
claim for relief and that was filed in any underlying proceeding.  Tex.
R. App. P. 52.7(a)(1).  A mandamus
action requires certainty as to both pleadings and facts.  Johnson v. Hughes, 663 S.W.2d 11, 12
(Tex. App.––Houston [1st Dist.] 1983, orig. proceeding).  If relator’s right to mandamus rests on
doubtful or disputed facts, mandamus will not issue.  West v. Solito, 563 S.W.2d 240, 245
(Tex. 1978) (orig. proceeding); In re Motor Car Classics LLC, No. 06-10-00051-CV, 2008 WL 2784437
(Tex. App.––Texarkana July 15, 2010, orig. proceeding) (mem. op.).

            In this proceeding, we have nothing
provided other than unsworn statements by Shepherd outlining alleged failures
by the trial court to comply with requests, with no underpinning of
documentation whatsoever to show that requests for a record were made, that an
appeal is pending at all in any court, or that Shepherd is entitled to a free
record if such an appeal exists.  We have
examined the posted records of this Court and of the Twelfth Court of Appeals
in Tyler, and note that no appeal is pending involving this individual in
either court.  

            Shepherd has not shown himself
entitled to the relief sought.

            We deny the petition.

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date
Submitted:          October 13, 2010

Date
Decided:             October 14, 2010

 






ffer any controverting expert testimony concerning the means and manner of the injury. Duren's
counsel demonstrated there was some degree of controversy in the medical community concerning
whether and to what extent the mens rea element can be ascertained solely from circumstantial
evidence concerning the nature and extent of the injury under the circumstances of Damon's injuries,
by asking the State's expert witnesses about contrary research or articles. Duren argues that his trial
counsel should have offered the reports or studies about which he asked the experts into evidence,
either directly or through expert witnesses.

 Duren's trial counsel did present evidence of an alternative manner and means by directly
presenting an alternative theory through Duren's testimony and in attempting, on cross-examination,
to elicit a concession from the State's expert witnesses that the injuries could have been caused by
a trivial fall, being tossed in the air, or resuscitative shaking. Duren's trial counsel also engaged the
services of Dr. Robert Goldberg to review the medical evidence and presumably develop an
alternative version of events, provided him with the medical evidence, and consulted with him
personally. Duren's trial counsel's failure to call Dr. Goldberg as a witness may have been due to
Dr. Goldberg's findings being similar to the State's experts' findings and, thus, not helpful to the
defense. There may also have been sound trial strategy for not offering into evidence the particular
articles mentioned. They may not have been admissible. See Tex. R. Evid. 803(18). The source
of the articles or the procedure used in the study may have been susceptible to credibility attacks. 
The injuries examined in the articles may have been distinguishable from Damon's injuries. 

 Duren contends he received ineffective assistance of counsel because his trial counsel
asserted a prejudicial insanity defense when there was no evidence to support this defense. Duren
recognizes that the testimony of Dr. Mary Weatherby, a local psychologist, amounted to the
conclusion that Duren was not aware of the reasonable certainty of death associated with his conduct,
but contends that raising an insanity defense when the evidence is not sufficient to establish an
insanity defense served only to distract the jury, at best, and make them angry, at worst.

 Duren's only viable defense was to attempt to show he did not have the requisite mental state
when he inflicted the fatal trauma on Damon. However, except when a defendant's sanity is at issue,
expert testimony regarding a defendant's state of mind at the time of the offense is inadmissible
during the guilt/innocence phase of trial. See Osby v. State, 939 S.W.2d 787, 790 (Tex. App.-Fort
Worth 1997, pet. ref'd). Because of the nature of the case, waiting to present the mitigating state of
mind evidence at punishment would be futile because if the jury found Duren guilty of murder, the
punishment was automatic, but if they found him guilty of a lesser-included offense, then there
would be no need for the mitigating evidence to show he had a lower mental state than required for
murder. By asserting an insanity defense, Duren's trial counsel was also able to introduce the
mitigating evidence and produce a psychological basis for the jury to find that Duren did not have
the requisite mens rea for capital murder. 

 Duren's trial counsel spent a considerable amount of time consulting with his client and with
Dr. Weatherby. The record reflects Duren's trial counsel also spent a considerable amount of time
researching the insanity issue. Counsel's assertion of the insanity defense reflects an effort to provide
the jury with otherwise inadmissible evidence to negate the mens rea element and prevent Duren's
conviction. 

 Duren contends he received ineffective assistance of counsel because his trial counsel failed
to object when the State cross-examined him about a prior extraneous event involving a fight with
his girlfriend. Although counsel does not have a duty to object to admissible evidence, under the
same reasoning discussed above, this extraneous-act evidence was inadmissible. Duren's trial
counsel demonstrated he knew extraneous-act evidence was objectionable when he objected just
moments later to the Wal-Mart incident. His failure to object to the slapping incident may be
explained as reasonable trial strategy to not draw the jury's attention to the testimony. Duren's trial
counsel may have already known about the slapping incident and determined the evidence that he
slapped his girlfriend after she had slapped him would not particularly harm him and would indicate
his girlfriend's tendency to resort to violence when she was angry, rebutting the possible inference
that Duren had inflicted Damon's old bruises. Duren's trial counsel may have objected to the other
extraneous offense because he did not know what had happened in that incident. 

 Even if his trial counsel's failure to object to the extraneous-offense testimony was not
reasonably professional or fell below the standard of prevailing norms, we do not find that there is
a reasonable probability that but for such errors, the result of the proceeding would have been
different. Based on the other evidence from which the jury could have inferred that Duren
knowingly inflicted Damon's injuries, absent the weak inferences that could have arisen from the
slapping incident, the result would likely have been the same. 

 Duren contends that his trial counsel's failure to object to the State's misstatement of the law,
during opening statements, regarding what the State must prove to find that Duren knowingly
inflicted Damon's injuries also constituted ineffective assistance of counsel. Duren contends that
during opening statements, the State said it need only prove Duren was aware that his conduct could
result in death, not that he must be aware his conduct was reasonably certain to result in death. 
Duren does not cite to the record, and we do not find that the State misstated the law during opening
arguments. In discussing the relevant mens rea requirement, the State told the jury that the State was
providing a shorthand version of "knowingly" and that the trial court would instruct them as to the
legal definition. Such comments were not objectionable; therefore, Duren's trial counsel did not err
in failing to object. 

 The alleged errors of trial counsel do not fall below the prevailing standard of competence
or did not harm Duren to the extent that there is a reasonable probability that without such errors the
result would have been different. This point is overruled. 

 The judgment of the trial court is affirmed. 



 Ben Z. Grant

 Justice


Date Submitted: July 16, 2002

Date Decided: August 14, 2002


Publish