**Opinion issued April 25, 2023**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-22-00616-CR

## NO. 01-22-00617-CR

_____

## JIMMY MATA, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1723877, 1723879**

---

## MEMORANDUM OPINION

Appellant Jimmy Mata, Jr. was charged with second-degree aggravated

assault by threat with a deadly weapon against two complainants, Veronica Reyes

Torres ("Veronica") and Albert Torres ("Albert").[1] *See* TEX. PENAL CODE §§ 22.01(a)(2), 22.02(a)(2). The State included one punishment-enhancement allegation in the indictments, to which Mata pleaded true. A jury found Mata guilty of both offenses, found the State's punishment-enhancement allegation true, and sentenced Mata to 30 years in prison for each conviction, to be served concurrently.

In two issues, Mata challenges the sufficiency of the evidence to support his conviction for aggravated assault against complainant Veronica and the trial court's exclusion of his expert witness in both cases. We affirm.

## Background

Maria Theresa Reyes ("Maria")[2] dated and lived with Mata "on and off" for approximately eleven years. In May 2021, Mata was living with Maria in her home.

On the afternoon of Friday, May 14, 2021, some of Maria's family members gathered at Maria's house after work to socialize. The group consisted of: Maria, Mata, Veronica (Maria's daughter), Albert (Veronica's husband), M.T. (Veronica

---

[1]   Mata was indicted in cause number 1723879 with aggravated assault by threat with a deadly weapon against complainant Veronica Reyes Torres (appellate cause number 01-22-00616-CR). He was also indicted in cause number 1723877 with another charge for aggravated assault by threat with a deadly weapon against a different complainant, Albert Torres (appellate cause number 01-22-00617-CR), but that arose out of the same course of conduct. The State tried these two charges together.

[2]   Maria is referred to as either Maria or Theresa in the record.

and Albert's five-year-old daughter), Robert Reyes (Maria's son), and Melissa[3] (Robert's girlfriend). The adults talked and drank alcohol on Maria's front porch, while M.T. "was running in and out [of the house], playing[.]"

At one point in the evening, Mata went inside to make himself a sandwich. Albert also went inside around the same time to use the restroom. As he walked inside, Albert saw Mata leave the kitchen and turn the lights off in the living room. Because M.T. was afraid of the dark and was in and out of the house, Albert asked Mata to turn on the lights. Mata responded by saying, "If you don't like it, why don't you fucking turn [them] on yourself."

Albert turned on the lights and then he and Mata exchanged heated words. Mata approached Albert and "took a swing" but missed. Albert hit Mata and they fell to the floor. When Albert hit Mata, his hand landed on metal, which he thought was a knife because Mata "always had a pocketknife." Thinking Mata had a knife, Albert grabbed Mata's hand and the two continued struggling.

Seeing the struggle, Maria and Veronica ran inside and tried to separate the two men. Maria and Veronica pushed Albert and Mata apart. Albert walked toward the front door, where M.T. was "screaming and crying." He turned around and saw that Mata was struggling with Veronica—"[h]e had her." Albert then saw Mata raise a gun, aim it in his direction, and fire one shot. Mata missed hitting anyone, but the

---

[3]     Melissa's last name is not included in the record.

bullet traveled close to both Veronica's and Albert's heads. Albert felt the bullet near his ear and he was "scared" and "in shock." Albert was afraid that if he stayed in the house Mata was "going to keep shooting, [and] could shoot somebody," so he ran.

Veronica, who was "right in front" of Mata when he fired the gun, was "scared and shaky" after the bullet went over her head. The sound of the gunshot "hurt [her] ears because it was just so close." Veronica then grabbed Mata's arm to stop him from shooting again. With his free hand, Mata grabbed Veronica's shirt and bra strap—scratching and bruising her chest—as he struggled with her and shouted multiple times "where is he at?" Mata was clutching his gun as he struggled with Veronica.

Maria grabbed a citronella candle from the table on the porch and hit Mata on the head. Ernest Bocanegra, Maria's nephew who lived next door and heard the gunshot, ran into Maria's house with an AR-15 rifle and screamed at Mata to "put the f'ing gun down." Mata eventually lowered his gun, left the house, and walked down the street.

Albert, Veronica, and Maria called 911. When Officer A. Nelson with the Houston Police Department responded to the scene, they recounted the incident to him. Officer Nelson searched the area for Mata but was unable to locate him. After concluding his on-scene investigation, Officer Nelson contacted the Harris County

4

District Attorney's office and obtained two charges for aggravated assault by threat with a deadly weapon and obtained a warrant for Mata's arrest.

## Sufficiency of the Evidence

In his first issue, raised in appellate cause number 01-22-00616-CR, Mata contends there is no evidence that he intentionally or knowingly threatened Veronica, and thus, insufficient evidence to support his conviction for aggravated assault with a deadly weapon.

### A. Standard of Review

Every criminal conviction must be supported by legally sufficient evidence as to each element of the offense that the State is required to prove beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011). To determine whether this standard has been met, we review all the evidence in the light most favorable to the verdict and decide whether a rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19; *Brooks v. State*, 323 S.W.3d 893, 901–02 (Tex. Crim. App. 2010).

The sufficiency of the evidence is measured by the elements of the offense as defined in a hypothetically correct jury charge—which is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and

adequately describes the particular offense for which the defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

It is presumed that the factfinder resolved any conflicting inferences in favor of the verdict, and a reviewing court defers to that resolution. *See Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Moreover, we must defer to the factfinder's evaluation of the credibility and weight of the evidence. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

**B.     Analysis**

Under the Texas Penal Code, a person commits the offense of assault if he "intentionally or knowingly threatens another with imminent bodily injury." TEX. PENAL CODE § 22.01(a)(2). The offense becomes an aggravated assault if that person "uses or exhibits a deadly weapon during the commission of the assault." *Id.* § 22.02(a)(2). The Texas Penal Code defines "bodily injury" to mean "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8). A firearm is considered a deadly weapon. *Id.* § 1.07(a)(17)(A).

It is well settled that a threat may be communicated by action, conduct, or words. *See McGowan v. State*, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984). The act of pointing a loaded gun at someone, by itself, is threatening conduct that supports a conviction for aggravated assault. *Jones v. State*, 500 S.W.3d 106, 113

(Tex. App.—Houston [1st Dist.] 2016, no pet.); *Fagan v. State*, 362 S.W.3d 796, 799 (Tex. App.—Texarkana 2012, pet. ref'd).

The indictment in this case alleged that Mata, "unlawfully, intentionally and knowingly threaten[ed] Veronica Reyes . . . with imminent bodily injury by using and exhibiting a deadly weapon, namely, a firearm." Thus, to obtain a conviction for aggravated assault with a deadly weapon, the State had to establish that Mata intentionally or knowingly threatened Veronica with imminent bodily injury while using or exhibiting a deadly weapon. *See* TEX. PENAL CODE §§ 22.01(a)(2), 22.02(a)(2).

At trial, Veronica testified that when she tried to help separate Mata and Albert, Mata drew a gun, walked towards her and Albert, and fired a shot toward them. Veronica stated that the bullet went over her head, but the gunshot was so close to her face that the sound hurt her ears. Veronica further testified that she immediately grabbed Mata's wrist to prevent him from shooting again.

After hearing the shot, Veronica "felt very scared and shaky" and stated that she not only feared for her own life and safety, but also for the lives and safety of her family members. She further testified that when she heard the gun discharge near her head, she thought "one of our lives [was] going to be gone. Like somebody was going . . . to be dead." Even though she was afraid, Veronica grabbed Mata's arm and struggled with him because she was afraid Mata would continue shooting.

7

She explained that she did not run away because she "d[id]n't want to get shot in [the] back."

Despite Mata's assertions to the contrary, the evidence demonstrates that it was not just Albert, but Veronica as well, who was in the line of fire when Mata raised the loaded gun and fired a shot.[4] *See, e.g.*, *Robbins v. State*, 145 S.W.3d 306, 314 (Tex. App.—El Paso 2004, pet. ref'd) (holding that sufficient evidence supported conviction for aggravated assault against police officers where evidence demonstrated that both officers were stationed near armored vehicle and were in line of fire when appellant pointed and shot his gun in direction of armored vehicle). Furthermore, the gun was fired close enough to Veronica's head that her ears were in pain and she feared for her life.

Based on all the evidence and the reasonable inferences therefrom, we conclude that a rational factfinder could have found beyond a reasonable doubt that

---

[4] Citing *McGowan v. State*, 664 S.W.2d 355 (Tex. Crim. App. 1984), Mata argues that the fact that he injured Veronica while he was "trying to move outside toward Albert" "does not suffice to commit the criminal offense of assault by threat." *McGowan* is distinguishable. In *McGowan*, the victim attempted to pull her daughter away from the defendant, who was beating her daughter, when the defendant suddenly stabbed the victim in the head. *Id.* at 357. The Court of Criminal Appeals held that this was insufficient to establish aggravated assault by threat against the mother because "[t]here [wa]s no evidence that prior to stabbing her [the defendant] threatened her in any way[;] [the mother] never saw [the defendant] holding a knife nor did she testify that [the defendant] threatened her with a knife[;] and after the defendant stabbed the mother, he fled. *Id.* at 357–58. Unlike in *McGowan*, the evidence here shows that Veronica saw Mata with the gun, that he fired it close to her head, that he continued to brandish the gun while struggling with Veronica, and that she testified she feared for her life.

Mata intentionally or knowingly threatened Veronica with imminent bodily injury while using or exhibiting a deadly weapon.[5]

We overrule Mata's first issue.

## Exclusion of Expert Testimony

In his second issue, raised in both appellate cause numbers, Mata argues that the trial court abused its discretion when it prevented his expert, Dr. Chelsea McCann, a clinical psychologist, from testifying at trial. According to Mata, Dr. McCann's testimony was directly tied "to the evidence before the jury that bore on the issues the jury had to decide, like the *mens rea* element." Mata contends he was harmed by the exclusion of this evidence because it undermined the defense that he planned to raise at trial—self-defense.

### A.     Standard of Review and Governing Law

We review a trial court's decision to exclude evidence under an abuse of discretion standard. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). That ruling will not be disturbed if it is within the zone of reasonable disagreement.

---

[5]     *See Jones v. State*, 500 S.W.3d 106, 113 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (holding sufficient evidence of defendant's intent to threaten victim with imminent bodily injury while using or exhibiting deadly weapon when defendant pointed gun at victim and fired, and victim testified he feared for his life); *see also Saavedra v. State*, No. 01-17-00295-CR, 2018 WL 3581081, at *5 (Tex. App.—Houston [1st Dist.] July 26, 2018, pet. ref'd) (mem. op., not designated for publication) (holding sufficient evidence to support defendant's conviction for aggravated assault with deadly weapon where victim testified that defendant pointed his gun at her, told her not to move while he robbed second victim, and that she was scared).

*Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). We may not substitute our own decision for that of the trial court. *Gonzalez*, 544 S.W.3d at 370.

For expert testimony to be admissible, the proponent must "demonstrate by clear and convincing evidence that the testimony is 'sufficiently reliable and relevant to help the jury in reaching accurate results.'" *Wolfe v. State*, 509 S.W.3d 325, 335 (Tex. Crim. App. 2017) (quoting *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992)); *see* TEX. R. EVID. 702, 705(c).

There are three requirements for the admission of expert testimony: (1) the witness qualifies as an expert by reason of her knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will assist the factfinder in deciding the case. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). These requirements are commonly referred to as (1) qualification, (2) reliability, and (3) relevance. *Id.* Mata's second issue concerns only the third requirement—whether Dr. McCann's testimony was relevant.

"Relevant evidence is generally admissible, irrelevant evidence is not." *Gonzalez*, 544 S.W.3d at 370 (citing TEX. R. EVID. 402). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401. "A 'fact of consequence' includes either an elemental fact or an

evidentiary fact from which an elemental fact can be inferred." *Henley v. State*, 493 S.W.3d 77, 84 (Tex. Crim. App. 2016).

Texas Rule of Evidence 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. Expert testimony that assists the jury in determining a fact in issue is admissible. *Flores v. State*, 513 S.W.3d 146, 162 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Echavarria v. State*, 362 S.W.3d 148, 153 (Tex. App.—San Antonio 2011, pet. ref'd) ("An expert's testimony is not admissible unless it will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" (quoting TEX. R. EVID. 702)).

Texas courts generally preclude third parties from testifying about the mental state of a defendant at the time of committing an offense. *See, e.g.*, *Avila v. State*, 954 S.W.2d 830, 839 (Tex. App.—El Paso 1997, pet. ref'd); *Osby v. State*, 939 S.W.2d 787, 791 (Tex. App.—Fort Worth 1997, pet. ref'd).[6] However, expert

---

[6] *See also Fairow v. State*, 943 S.W.2d 895, 899 (Tex. Crim. App. 1997) ("It is impossible for a witness to possess personal knowledge of what someone else is thinking. The individual is the only one who knows for certain the mental state with which he is acting."); *Jackson v. State*, 548 S.W.2d 685, 692–93 (Tex. Crim. App. 1977) (upholding trial court's refusal to allow psychiatrist to testify concerning defendant's state of mind at time of alleged offense).

testimony may be admissible if it negates the *mens rea* element of an offense. "[R]elevant evidence may be presented which the jury may consider to negate the *mens rea* element" of the offense, and this evidence "may sometimes include evidence of a defendant's history of mental illness." *Jackson v. State*, 160 S.W.3d 568, 574 (Tex. Crim. App. 2005).

A trial court has discretion to determine whether evidence of mental illness, for example, may be presented to negate mens rea, or whether the evidence should be excluded on special grounds. *Id.*; *see Ruffin v. State*, 270 S.W.3d 586, 588 (Tex. Crim. App. 2008) ("[B]oth lay and expert testimony of a mental disease or defect that directly rebuts the particular *mens rea* necessary for the charged offense is relevant and admissible unless excluded under a specific evidentiary rule."). This evidence "may also be excluded if it does not truly negate the required *mens rea*." *Ruffin*, 270 S.W.3d at 596.[7]

**B.   Analysis**

In a hearing outside the jury's presence, Dr. McCann testified that she conducted a single four-hour interview and psychological evaluation of Mata on June 23, 2022, with the intent to gather "general clinical impressions regarding the

---

[7]   *See Mays v. State*, 318 S.W.3d 368, 381 (Tex. Crim. App. 2010) (stating that mental illness testimony may be relevant for mitigation purposes during punishment phase, but "expert testimony that does not directly rebut the culpable mental state usually may be excluded at the guilt stage").

family dynamics and things of that nature . . . ." Dr. McCann explained that, in preparation for Mata's evaluation, she reviewed the offense report for this incident and records of Mata's previous criminal history. But Dr. McCann did not watch the responding officer's body camera video or interview any witnesses to the offense. Dr. McCann also did not discuss the alleged offense with Mata during the evaluation.

Dr. McCann stated that she planned to testify about family dynamics as well as her "[g]eneral impressions" that Mata is "an individual that has been in a relationship that has been conflictual, per Mr. Mata, as well as his history of alcohol use that he shared with [her] during the evaluation."

> I would state my overall general opinion of Mr. Mata is that he was involved in an interpersonal relationship that he described as conflictual to his relationship with one of the complainants as well as with the complainant's son. He described the relationship as not reciprocal in nature. And in general, overall clinical impression was recommending individual therapy to assist him in processing things that he has gone through, including anger management, conflict resolution, and his previous alcohol use, as well.

Dr. McCann also explained that she would offer the opinion that when troubled family dynamics and conflicts remain unaddressed or unprocessed, it can lead to a build-up of unresolved feelings and emotions that impact decision-making, judgment, and overall perception of a situation, which potentially occurred here. Dr. McCann admitted that she did not intend to testify about whether Mata acted in self-defense, about how he might have been feeling at the time of the offense, or whether he acted with the requisite culpable mental state.

13

At the conclusion of the hearing, the State objected that although Dr. McCann's testimony could be relevant to punishment, it was inadmissible in the guilt phase because it would not assist the jury in assessing any material fact question related to the charged offense.

In response, Mata argued that Dr. McCann's opinion was "relevant to the claim of self-defense, which is a subjective as well as objective standard within the state of mind of the defendant at the time." Mata contended that Dr. McCann's testimony regarding the family dynamics and conflicts would support his self-defense claim by showing his "subjective belief" that, because of the interpersonal drama and perceived "inflated risk or the risk of actual injury or harm[,]" he needed to defend himself during the altercation.

> After hearing argument, the trial court advised the parties as follows:
>
> I think I'm going to need to hear both sides' arguments about the self-defense charge before I make a determination about whether the doctor's testimony is relevant. If I don't give them a charge on self-defense, then I don't find it's relevant. But if I do charge them on self-defense, then I am going to find it relevant. So if y'all need a moment to discuss that, that's fine.

The trial court later sustained the State's objection to Dr. McCann's testimony in the guilt-innocence phase and told the parties:

> [B]ased on the evidence that the Court heard throughout the trial and the proffer from the doctor, Dr. McCann, about what she would say, the Court does not believe that there is -- that her testimony is relevant because the Court does not believe that the burden has been met to give the jury a jury instruction on self-defense, either under Section 9.32 or

14

Section 9.31. The Court is taking into account what the doctor's testimony would have been in coming to that conclusion.

So because my expectation is that this is the end of evidence, I don't find her testimony relevant.

Viewing the record under the applicable standard of review, we conclude that the trial court did not abuse its discretion in excluding Dr. McCann's testimony during the guilt-innocence phase of trial. Indeed, nothing in Dr. McCann's testimony negates the *mens rea* elements of the charged offenses. She explicitly stated that she was not opining on Mata's mental state or what he was feeling at the time of the offense. At most, Dr. McCann's testimony explains why Mata could have perceived the complainants as threats to him, but it in no way "directly rebut[s]" the culpable mental states for the charged offenses. *See Johnson v. State*, Nos. 01-19-00776-CR, 01-19-00818-CR, 2022 WL 963277, at *12–13 (Tex. App.—Houston [1st Dist.] Mar. 31, 2022, pet. ref'd) (mem. op., not designated for publication) (affirming exclusion of expert testimony as to why defendant committed charged offenses because testimony did not directly rebut culpable mental state for crimes but rather explained why defendant perceived complainants as threats).[8]

Most importantly, the trial court refused to instruct the jury on self-defense and Mata does not challenge that on appeal. Indeed, Mata admits that the evidence

---

[8] *See also Ruffin v. State*, 270 S.W.3d 586, 596 (Tex. Crim. App. 2008) (evidence of defendant's state of mind "may also be excluded if it does not truly negate the required *mens rea*").

adduced at trial did not raise any issue of self-defense. Accordingly, where the evidence does not raise an issue of self-defense, expert testimony on the defendant's state of mind at the time of the offense is "not relevant to any issue in the case," and a trial court does not abuse its discretion in excluding it. *See Osby*, 939 S.W.2d at 792.

For this same reason, we also hold that even if the trial court erred in excluding Dr. McCann's testimony, and we do not believe it did, any such error is harmless. Errors in the admission or exclusion of evidence are typically non-constitutional in nature. Accordingly, even when such error is established, an appellate court will disregard the error unless the court determines that it affected the defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010).

A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Coble*, 330 S.W.3d at 280. But if the excluded evidence could not have influenced the jury or had but a slight effect upon its deliberations, then such non-constitutional error is harmless. *Id.* In conducting this harm analysis, we examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence. *Id.*

Here, Mata contends that Dr. McCann's testimony was relevant to the issue of self-defense, but he concedes that self-defense was not raised by the evidence and

16

the jury was not instructed on self-defense. He also concedes that Dr. McCann would not have testified to self-defense directly. Moreover, the evidence against Mata is substantial. Three eyewitnesses all testified similarly that Mata was the aggressor who instigated the fight with Albert and that it was Mata who escalated the situation by firing his gun toward Albert and Veronica, both of whom were unarmed.

Based on our consideration of the record as a whole, we therefore conclude that the exclusion of Dr. McCann's testimony, even if erroneous, had no more than a slight effect, if any, on the jury's deliberations or verdict. *See id.* We overrule Mata's second issue.

## Conclusion

For all these reasons, we affirm the trial court's judgments in all things.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Kelly and Goodman.

Do not publish. TEX. R. APP. P. 47.2(b).

17